[No. A096718. First Dist., Div. Three. July 31, 2002.]

CARLOS Q. LEAL, Plaintiff and Appellant, v.
STEVEN GOURLEY, as Director, etc., Defendant and Respondent.

## COUNSEL

Robert J. Beles, Jerry C. Lipkin and Paul McCarthy for Plaintiff and Appellant.

Bill Lockyer, Attorney General, and Miguel A. Neri, Deputy Attorney General, for Defendant and Respondent.

## OPINION

McGUINESS, P. J.—Government Code[1] section 11435.60 requires that certain state agencies notify parties who may appear before them of their right to an interpreter at hearings conducted by the agencies. Section 11435.60 also requires that the affected agencies give notice of the right to an interpreter "at the same time that each party is advised of the hearing date."

In this case, the Department of Motor Vehicles (DMV)—an agency subject to the provisions of section 11435.60, pursuant to section 11435.15,

---

[1] All further statutory references are to the Government Code, unless otherwise noted.

subdivision (a)—notified Carlos Q. Leal that he had a right to an interpreter at an administrative hearing (admin per se hearing) at which the propriety of the suspension of his driver's license would be adjudicated. However, DMV did not notify him of that right at the same time it notified him of the hearing date. Instead, it did so at an earlier point in time—when Leal was arrested for driving under the influence and was issued a notice of suspension/revocation of his license by the arresting officer, Oakland Police Officer Eric Lewis.

As detailed below, we conclude that DMV's failure to inform Leal of his right to an interpreter at the time it notified him of the date of his admin per se hearing constitutes a violation of section 11435.60. However, we also conclude that the error was harmless. Nonetheless, we express our concern that DMV has reportedly not modified the form by which it provides notice of hearing dates to conform to the dictates of section 11435.60. We further reject Leal's claim that the notice of a right to an interpreter included in the notice of suspension/revocation issued on the night of Leal's arrest was defective because it was printed only in English. Finally, we reject Leal's claim that the administrative record created by DMV was inadequate for purposes of trial court and appellate review.

## I. FACTS

In Officer Lewis's report regarding Leal's arrest, he indicated that, on March 31, 2001, at "around 11:20" p.m., he saw Leal driving at a high rate of speed on MacArthur Boulevard in Oakland. Officer Lewis pulled Leal over and approached the car. He smelled a strong odor of alcohol on Leal's breath. Leal displayed an unsteady gait after exiting the car and failed several field sobriety tests. Officer Lewis asked Leal to recite his ABC's in English or Spanish, but he could not complete them in either language. Leal refused to take any other tests. Officer Lewis served Leal with an "Age 21 And Older Administrative Per Se Suspension/Revocation Order And Temporary Driver License" (admin per se suspension order)—a standard DMV form. The order notified Leal that his license would be suspended for his refusal to take a chemical test unless he sought a hearing within 10 days of his arrest. Leal sought a hearing, which was held on May 3, 2001.

The admin per se hearing was tape-recorded by Hearing Officer Gina Madlangbayan. The hearing officer indicated that four issues were to be decided at the hearing: (1) did Officer Lewis have reasonable cause to believe that Leal was driving under the influence when he arrested him; (2) was Leal lawfully arrested; (3) was Leal told that his license would be suspended for one year or revoked for two or three years if he refused to take

a chemical test; and (4) did Leal refuse or fail to take a chemical test after being asked to do so by Officer Lewis? The hearing officer admitted the police report and the admin per se suspension order into evidence. Officer Lewis then testified in conformity with his report described above. He specifically stated that Leal refused to take a breath test and failed to respond when asked if he would take a blood test. Officer Lewis informed Leal that his refusal would result in the suspension of his license for one year. Leal did not respond.

Leal testified that he did not refuse to take any field tests and believed that he performed them well. He told Officer Lewis that he did not know the entire alphabet in English; so, Officer Lewis asked him to recite the alphabet in Spanish. Officer Lewis said that he did not complete the alphabet in Spanish. Leal argued that Lewis would not know if he did so or not because Lewis does not speak Spanish. The hearing officer then asked if he refused to take a breath test. Leal replied: "I refused after this I won't—I refused and I never answered no, because the way he treat me at the [transcription unclear] on the 15th." The hearing officer asked again if Leal had refused the test, and Leal stated: "I refused. I refused. I refused because he said if you do the test, then it's possible you can go home or he already told me—he was telling me I was wrong from the [transcription unclear]. So and I [rest of response not transcribed due to overlap with hearing officer's next question]." When asked why he refused, Leal testified: "Because the way he was treating me the whole time because he says look, he says uh, well, you didn't pass this, you're drunk. So, I said I didn't know I had to take a test [transcription unclear] so I refused [rest of answer unclear.]" When the hearing officer asked if he were claiming that Officer Lewis never read him the admonition that his license would be suspended if he did not take a chemical test, Leal stated: "I think he did that." However, Leal claimed that, by that point, he was no longer paying attention. He said that he was not paying attention because, by the time the admonition was read, he was "mad." At the end of the hearing, the hearing officer asked if Leal understood that his refusal to take a chemical test was going to result in his license being suspended for a year, and Leal replied that he understood. Later that day, Madlangbayan issued formal findings, supporting Leal's license suspension from May 16, 2001, through May 15, 2002.

Leal petitioned for a writ of administrative mandate. Leal supported the petition with a declaration in which he stated that his primary language is Spanish; he can understand some English if it is spoken slowly. He stated that the officer recited the admonition about having his license suspended if he did not take a chemical test very quickly in English. He could not keep up with what was being said. That is why he said at the hearing that he "could

not pay attention to what the officer was saying." He also stated that he gave no answer to Officer Lewis's request that he take a breath test. Prior to the hearing on the petition, Leal filed supplemental points and authorities, asserting that he had been denied his statutory right to an interpreter at the admin per se hearing due to DMV's failure to give him notice of the right to request an interpreter. He also contended that he was entitled to have the license suspension lifted because DMV failed to provide a complete record of the admin per se hearing for purposes of the writ petition.

The trial court issued a tentative ruling denying Leal's petition. When Leal did not challenge the tentative ruling, the court issued an order denying the petition, and judgment was entered in conformity with the order.

## II.  DISCUSSION

### A.  DMV's Failure to Comply with the Requirements of Section 11435.60 Constitutes Harmless Error

■ Section 11435.60 provides: "Every agency subject to the language assistance requirement of this article shall advise each party of the right to an interpreter at the same time that each party is advised of the hearing date . . . . Each party in need of an interpreter shall also be encouraged to give timely notice to the agency conducting the hearing . . . so that appropriate arrangements can be made." Plainly, section 11435.60 requires simultaneous notice of a party's hearing date and his or her right to an interpreter at the hearing. At oral argument, DMV conceded that its notice did not meet the requirements of section 11435.60 because the notice was not given "at the same time that [Leal was] advised of the hearing date." However, that concession is only the first step in determining whether or not Leal is entitled to reversal. Indeed, pursuant to article VI, section 13 of the California Constitution, "[n]o judgment shall be set aside . . . in any cause, . . . for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." Here, both the legislative intent embodied in section 11435.60 and the evidence presented in support of Leal's petition for a writ of administrative mandate persuade us that DMV's violation of section 11435.60 did not result in a miscarriage of justice.

■ The most significant rule to follow in interpreting a statute is ascertaining the intent of the Legislature in enacting it. (*Lennane v. Franchise Tax Bd.* (1994) 9 Cal.4th 263, 268 [36 Cal.Rptr.2d 563, 885 P.2d 976].) ■ The plain intent of the Legislature in enacting section 11435.60 is to

give those who do not speak English well—or at all—the opportunity to secure the services of a interpreter at a hearing in which their rights may be affected. To that end, section 11435.60 requires that a person desiring or needing a interpreter be notified of the right to request one a sufficient time in advance of the hearing so that one can be provided. Here, although the notice of hearing sent to appellant by DMV did not include the notice required by section 11435.60, the admin per se suspension order given to appellant by Officer Lewis included, in bold print, the precise information required under section 11435.60: "You have the right to have an interpreter present at your hearing. If you require the service of an interpreter and you are requesting a hearing, please notify [DMV] in a timely manner of the need for such service." Thus, Leal was clearly and unambiguously informed of his right to an interpreter at an *earlier* point in time than required by section 11435.60. Under the circumstances, we conclude that the notice provided in the admin per se order was adequate to satisfy the purpose, if not the letter, of section 11435.60.

We also note that the record is devoid of evidence of prejudice to Leal stemming from DMV's violation of section 11435.60. In that regard, we first observe that Leal did not claim in the trial court—and does not claim on appeal—that he was unaware of his right to an interpreter, as set forth in bold print in the admin per se suspension order.[2] We also observe that Leal did not claim before the trial court that he was prejudiced by the lack of an interpreter at the admin per se hearing. Appellant's declaration in support of his petition is telling in that regard. While he claimed in his declaration that language issues may have had an impact on his interaction with Officer Lewis, he never claimed that he suffered any detriment at the admin per se hearing as a result of a lack of comprehension of the language used at the hearing (English) or the absence of a interpreter.

In sum, Leal was not prejudiced by DMV's violation of section 11435.60.

B.  *Section 11435.60 Does Not Require That Notice of the Right to an Interpreter Be Printed in Any Language Other Than English*

Leal offers one final argument in an effort to persuade us that the notice of a right to an interpreter provided in the admin per se suspension order was inadequate to satisfy the purpose of section 11435.60. In support of that argument, he initially points out that section 11435.30 requires the

---

[2]We note, in passing, that it would have been difficult for Leal to establish, as a factual matter, that he was unaware of his right to an interpreter, as set forth in the admin per se suspension order, in light of his exercise of the right to seek a hearing challenging his license suspension—a right also disclosed in the admin per se suspension notice.

State Personnel Board to "establish, maintain, administer, and publish" a list of certified hearing interpreters it has determined to be sufficiently proficient in various languages to serve as interpreters at administrative proceedings. He then notes that, pursuant to section 11435.40, the State Personnel Board must designate the languages for which certification must be established under section 11435.30 and that those languages must "include, but not be limited to, Spanish, Tagalog, Arabic, Cantonese, Japanese, Korean, Portuguese and Vietnamese until the State Personnel Board finds that there is an insufficient need for interpreting assistance in these languages." Based on the provisions of sections 11435.30 and 11435.40, he reasons that *any* notice of the right to an interpreter that is not printed in at least the eight languages set out in section 11435.40 is necessarily inadequate for section 11435.60 purposes.

In essence, Leal argues that we should read into section 11435.60 a requirement that the notice of a right to an interpreter, regardless of when it is given, must be printed in at least the eight languages set out in section 11435.30, plus English. That is not our province. Pursuant to Code of Civil Procedure section 1858, when interpreting a statute, it is our responsibility to "ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted." Nothing in section 11435.60 requires that the notice of the right to an interpreter be printed in any language except English, and we decline to read such a requirement into the statute.

C. *The Administrative Record Was Adequate for Purposes of Both the Trial Court's Assessment of the Validity of Appellant's Writ Petition and Appellate Review*

Leal argues that his rights were violated by DMV's failure to create an adequate record of the administrative hearing for trial court and appellate review. He begins that argument by acknowledging that, pursuant to Vehicle Code section 13353, a driver's refusal to submit to a chemical test ordinarily mandates suspension of his or her license. However, he asserts that, where a driver's refusal is due to officer-induced confusion, such refusal does not require license suspension. Here, he contends that the hearing record presented by DMV to the trial court contains some evidence suggesting that his refusal to take a chemical test was officer induced. However, he claims that the transcript of the admin per se hearing—or the tape from which the transcript was prepared—contains so many portions where one person was talking over another and where the transcriber could not make out a complete answer that it is difficult, if not impossible, to tell what happened at the hearing. He goes on to contend that DMV had the burden of providing a complete hearing record for trial court review. He concludes that DMV's

failure to provide such a record requires DMV either to lift his license suspension or grant him a new hearing. Leal's argument is largely based on *Frase v. Gourley* (2000) 85 Cal.App.4th 762 [102 Cal.Rptr.2d 432] (*Frase*). As analyzed below, *Frase* is readily distinguishable from the case before us.

In *Frase*, DMV suspended Frase's license following an admin per se hearing. Frase filed a petition for a writ of administrative mandate. DMV was unable to produce substantial portions of the hearing record for review by the superior court. Specifically, DMV erased, and thus could not produce, the testimony of two witnesses at the hearing—Frase and his expert. The deputy attorney general assigned to the case offered to have a new hearing conducted at DMV's expense, but DMV refused. The trial court set aside the suspension, and the Court of Appeal affirmed the trial court. (*Frase, supra,* 85 Cal.App.4th at pp. 764-767.)

The Court of Appeal noted that DMV has the burden of providing and certifying a record of the admin per se hearing to the trial court. However, if DMV "does not maintain a record which is adequate for judicial review it may choose, for example, to set aside the order, reconstruct the record, prepare a summary of the facts, or hold a new hearing. [Citations.] On the other hand, if it fails to maintain an adequate record and then refuses to assist the petitioner in compiling the record, 'the agency can be foreclosed from disputing petitioner's statement of fact' [citation] or the court may set aside the order of suspension on that basis." (*Frase, supra,* 85 Cal.App.4th at p. 765.) In *Frase*, DMV produced an administrative record that was missing key components and refused to take any reasonable steps to create a new or complete record. Accordingly, the Court of Appeal had no difficulty upholding the trial court. (*Id.* at pp. 766-767.)

The situation here is significantly different from the one addressed in *Frase*. For example, here the record includes all of the testimony of both Officer Lewis and Leal—the only two witnesses at the admin per se hearing. It is true that some portions of the transcript of the tape-recorded hearing reflect the transcriber's inability to make out portions of some statements made by the hearing officer, Officer Lewis or Leal due to the fact that more than one person was talking at a time or because some statement was otherwise unclear. However, the record does not indicate that Leal ever asked DMV to make any attempts to improve the transcript, nor does the record indicate that he ever asked for any assistance DMV was under a duty to provide or requested a new hearing. Thus, we conclude that DMV did not fail to produce an adequate record for judicial review.

We also note that there is no merit to Leal's suggestion that the record supports the conclusion that his refusal to take a chemical test was due to

officer-induced confusion. Indeed, as reflected in part I., *ante*, Leal repeatedly testified that he refused to take a chemical test. When asked if he refused because Officer Lewis failed to tell him he would lose his license if he did not take a test, he corrected the hearing officer, stating, "I think he [Officer Lewis] did that." Finally, Leal admitted that he was not paying attention at that point in his interchange with Officer Lewis because he was "mad" at the way he had been treated. In sum, the record contains substantial evidence supporting the conclusion that Leal understood the consequences of failing to take a chemical test and chose to bear those consequences. (*Yordamlis v. Zolin* (1992) 11 Cal.App.4th 655, 689 [14 Cal.Rptr.2d 225].) We see no error on the part of the hearing officer or the trial court.

## III. CONCLUSION

Although, as reflected herein, we have found that Leal was not prejudiced by DMV's actions or inactions, our decision affirming the judgment of the trial court should not be viewed as approving or condoning DMV's violation of section 11435.60. In that regard, we first observe that DMV's provision of notice of the right to an interpreter only in the admin per se suspension order given to one who refuses a chemical test violates not only section 11435.60 but also DMV's own regulations: "*In addition to the notice required by . . . section 11435.60,* [DMV] shall notify each party of the right to an interpreter at the time they [*sic*] are notified of their right to a hearing." (Cal. Code Regs., tit. 13, § 115.03, subd. (a), italics added.) Thus, DMV recognizes that its choice to give a party notice of the right to an interpreter at the time he or she is informed of the right to a hearing does not obviate its *statutory* duty to give notice of the right to an interpreter at the time a party is notified of the date of the hearing. Moreover, at oral argument, the Attorney General informed this court that DMV has not changed its standard hearing date notice form to conform to the dictates of section 11435.60. If this representation is accurate, DMV's actions constitute a willful failure to follow legislative mandate and its own regulations. If it has not already done so, DMV has an immediate obligation to alter its standard form to comply with section 11435.60.

## IV. DISPOSITION

The judgment is affirmed. Leal to bear costs of appeal.

Corrigan, J., and Pollak, J., concurred.