Filed 1/29/14  Kroll v. DMV CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| BENJAMIN KROLL,<br><br>       Plaintiff and Appellant,<br><br>v.<br><br>DEPARTMENT OF MOTOR VEHICLES,<br><br>       Defendant and Respondent. | A137416<br><br>(Marin County<br>Super. Ct. No. CIV 1203977) |

Benjamin Kroll appeals the denial of his petition for writ of mandate challenging the suspension of his driver's license by the Department of Motor Vehicles (DMV). (Code Civ. Proc., § 1094.5; Veh. Code, § 13559, subd. (a).)  He contends:  (1) the trial court's reliance on the out-of-court statements of a witness who invoked the Fifth Amendment at the DMV administrative hearing deprived him of due process; (2) the trial court did not independently determine the credibility of witnesses at the DMV hearing as it was required to do; and (3) the trial court's decision is unsupported by substantial evidence.  We affirm.

## I.      BACKGROUND

At about 3:20 a.m. on October 1, 2011, California Highway Patrol officers responded to a single vehicle rollover accident on a freeway onramp in San Francisco. They found a Jeep Cherokee upended on its roof with moderate damage, including a shattered passenger side window.  Kroll and Tracy Mahon were at the scene.  The registered owner of the Jeep was James Mahon.

1

Kroll told Officer Farley someone named "Maureen" had been driving the Jeep, though he was unable to provide any additional information about this person. Kroll asserted he had not been in the Jeep, but had received a telephone call from "Dave" and had been dropped off at the accident scene by his good friend "Ken." He could not provide any details about the car in which he had been riding, nor did he remember where he had been sitting inside that car. Farley noticed a two-inch red burn mark on the left side of Kroll's neck consistent with a seatbelt, which Kroll explained by saying, "Well[,] I do martial arts." Farley also noticed a fresh spot of blood on Kroll's left sock, caused by a cut on his left ankle that was still oozing blood. Asked about the injury, Kroll again stated he did martial arts. Farley noted Kroll's height (six feet) was consistent with the position of the Jeep's driver's seat. Mahon was shorter than Kroll.

Farley smelled alcohol and noticed Kroll's speech was very slurred. Kroll acknowledged drinking three rum and gin cocktails. After he failed field sobriety tests, Kroll was arrested on suspicion of driving under the influence and with a blood alcohol level in excess of .08 percent. (Veh. Code, § 23152, subds. (a), (b).) A breath test conducted at 4:52 a.m. produced blood alcohol level readings of .085 and .084 percent, and a blood draw taken at 5:05 a.m. resulted in a reading of .08 percent.

Mahon, who was transported to the hospital from the accident scene, was given presumptive alcohol screenings at 3:46 and 3:49 a.m. that showed blood alcohol levels of .126 and .116 percent. During questioning by another officer, Mahon said she had been at a party in San Francisco and was on her way to her home in San Bruno, riding in the front passenger seat with someone named "Margaret" driving. At first Mahon said Kroll had not been in the Jeep, but she later stated he had been sitting in the back passenger seat at the time of the accident. She appeared intoxicated and was unable to provide further information about the accident.

Kroll was notified his driver's license would be suspended. (Veh. Code, § 13353.2, subd. (a)(1).) An administrative hearing was held before a DMV officer, at which Kroll stipulated to having a blood alcohol level of .08 percent but challenged the license suspension on the ground that Mahon had been driving the Jeep.

2

Kroll testified that on the night of the accident, he attended a nautically-themed party in San Francisco along with his friends Rosalie Morgan, Kyle Misner and David Anderson. Kroll dressed up as a pirate, and carried a long rapier-type sword.[1] Sometime after 3:00 a.m., Kroll determined he was too intoxicated to drive, and Misner offered to drive Kroll and Morgan back to his (Misner's) house for the night. They left in Misner's car, with Misner driving, Kroll riding in the front passenger seat, and Morgan riding in the back. As the three of them were leaving the party, they saw Anderson and Mahon, who said they were going back into the party and then on to Mahon's house.

Shortly after leaving the party, Morgan got a call from Anderson saying he had been in an accident and needed help. Misner drove to the scene, where they saw the Jeep flipped over on the onramp, with Mahon and Anderson standing in the center of the onramp trying to wave off other cars. Kroll used Morgan's cell phone to call the police and stayed on the line with them until officers arrived. Mahon told Kroll someone named Maureen had been driving but had run off. Kroll denied having a red mark on his left shoulder as described by Farley, presenting photographs he had taken of his upper torso the evening following the accident that did not show any red marks. As to the ankle wound, Kroll explained that the sword he was carrying as part of his costume cut his ankle while he was dancing.

Morgan and Misner similarly testified that Kroll had left the party in Misner's car. Anderson testified he had ridden with Mahon, who was driving the Jeep at the time of the accident. All three maintained Kroll had only arrived at the accident scene after Anderson called Morgan to tell her about the crash. They also testified that Kroll remained at the scene with Mahon while Misner drove Anderson and Morgan to his

---

[1] The police report indicates that at the time of his arrest, Kroll was wearing "casual" clothes: brown tennis shoes, tan corduroy pants and a green wool collared shirt. Asked about this apparent discrepancy by the DMV hearing officer, Kroll explained that the people holding the party had made costumes available for guests to wear, and that he had left the costume portion of his clothing in his own car, which was parked near the party.

3

(Misner's) house. Misner claimed he later returned and told police Kroll was not the driver, but was directed to leave.

Mahon was also called as a witness, and testified she had seen Kroll and his friends at the party. When asked about leaving the party and the circumstances of the accident and its aftermath, she invoked her Fifth Amendment right against self-incrimination and refused to answer further questions.

Farley testified that he concluded Kroll was the driver based on the fresh seat belt mark on Kroll's left shoulder, which was consistent with the partial distention of the Jeep's driver's side seat belt, as well as the positioning of the driver's seat to fit a person of Kroll's height, and Mahon's statement placing Kroll inside the Jeep. He had Kroll sit in the driver's seat to confirm that he fit the driver's seat as adjusted. Farley indicated he would not be surprised if the red mark he had observed on Kroll's shoulder had faded by the following morning.[2] He did not recall Misner coming to the accident scene.

The DMV hearing officer upheld the license suspension. In her written findings, the hearing officer indicated she was giving no weight to Mahon's testimony at the hearing, and concluded that Morgan, Misner and Anderson were not credible witnesses. The officer also noted, "[Kroll] stated that he sat on the right passenger side of Mr. Misner's car, however, [Farley] determined that the belt mark[] was on his left neck and left shoulder. His excuse[] that martial arts caused his ankle injury is given little weight because his ankle's injury still had fresh blood bleeding. The pictures taken by [Kroll] [were] not taken at the time of the accident therefore, they are given no weight. Therefore, the testimony of [Kroll] is not deemed credible at the hearing. [¶] [Farley] was consistent while testifying, in that his testimony at the hearing is consistent with his report which [was] made at or near the time of the accident."

Kroll filed a petition for writ of mandate in superior court challenging the license suspension. He argued: (1) his Sixth Amendment right to confront witnesses was

---

[2] Although Farley was asked about the injury dissipating by the following morning, the photographs of Kroll's torso were taken the evening of October 1 after 7:00 p.m.

4

violated because Mahon refused to answer questions about the accident; (2) the evidence he presented at the DMV hearing rebutted the presumption that he was driving; and (3) the trial court had the power to make its own credibility determination and should find his witnesses credible.

After hearing argument and taking the matter under submission to review the administrative record, the trial court issued an order denying the writ. "The evidence strongly supports the Hearing Officer's determination that '[Kroll] was driving a motor vehicle at the time that concentration of alcohol in his blood was at or above 0.08%.' . . . Moreover, the evidence also strongly supports the determination that the arresting officer had probable cause to believe that [Kroll] was in violation of Vehicle Code [section] 23152 . . . , and that the arrest was lawful. The court notes that the Hearing Officer was in the best position to assess the credibility of the witnesses."

The criminal charges against Kroll for driving under the influence were dismissed for lack of evidence.

## II.    DISCUSSION

A.    *License Suspension Procedure and Standard of Review*

The DMV must immediately suspend the driving privileges of a person who drives a motor vehicle with a blood alcohol level of .08 percent or higher. (Veh. Code, § 13353.2, subd. (a)(1).) The driver may request an administrative hearing to challenge the suspension, which will be upheld if the DMV demonstrates by a preponderance of the evidence (1) the peace officer had reasonable cause to believe the person was driving in violation of Vehicle Code section 23152; (2) the person lawfully was arrested; and (3) the person was driving with a blood alcohol level of .08 percent or higher. (Veh. Code, §§ 13557, subd. (b)(1), 13558, subds. (a), (c)(2); *Lake v. Reed* (1997) 16 Cal.4th 448, 454, 456 (*Lake*); *Manriquez v. Gourley* (2003) 105 Cal.App.4th 1227, 1232.)

An administrative hearing on a license suspension "need not be conducted according to technical rules relating to evidence and witnesses . . . . Any relevant evidence shall be admitted if it is of the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any

5

common law or statutory rule which might make improper the admission of the evidence over objection in civil actions." (Gov. Code, § 11513, subd. (c); *Hildebrand v. Department of Motor Vehicles* (2007) 152 Cal.App.4th 1562, 1569.) A police report is " 'the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs.' " (*Lake*, *supra*, 16 Cal.4th at p. 461.) Hearsay evidence may be introduced "for the purpose of supplementing or explaining other evidence, but over timely objection shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions." (Gov. Code, § 11513, subd. (d); see *Hildebrand v. Department of Motor Vehicles,* at p. 1569.)

A driver dissatisfied with the result of a license suspension hearing may file a petition for writ of administrative mandate in superior court. (Veh. Code, § 13559, subd. (a); Code Civ. Proc., § 1094.5.) The court must exercise its independent judgment to determine whether the weight of the evidence supports the DMV's decision. (Veh. Code, § 13559, subd. (a); *Lake, supra*, 16 Cal.4th at p. 456.) On appeal, we review the record to determine whether substantial evidence supports the trial court's findings, and may overturn the trial court's factual findings only if the evidence is insufficient as a matter of law. (*Lake*, at p. 457.) We review de novo any pure questions of law. (*Brierton v. Department of Motor Vehicles* (2005) 130 Cal.App.4th 499, 508 (*Brierton*).)

B.    *Kroll Was Not Denied Due Process Based on Mahon's Invocation of Her Fifth Amendment Right to Silence*

The police report introduced at the administrative hearing described three statements made by Mahon on the night of the accident—that someone named "Margaret" had been driving the Jeep, that Kroll had not been inside the Jeep at the time of the accident, and that Kroll had been in the back passenger seat of the Jeep. Kroll argues the use of these statements deprived him of due process because Mahon invoked her right to remain silent at the hearing and could not be cross-examined.[3] We disagree.

---

[3] As might be expected, the reason for Mahon's invocation of the Fifth Amendment privilege is not a part of the administrative record. While Kroll's briefing at times treats the invocation as support for his claim that Mahon was the actual driver and

6

We begin by noting that only the last of the three statements by Mahon—that Kroll was in the back seat of the Jeep at the time of the accident—was incriminating in any way, because it contradicted his claim he arrived at the scene after the accident. The other two statements—that someone named Margaret had been driving the Jeep and that Kroll had not been in the Jeep—supported Kroll's claim he was not the driver and were not in any sense prejudicial to his case. Our discussion therefore focuses on Mahon's statement that Kroll was riding in the back seat of the Jeep.

When, as here, the independent judgment test is applied at the trial court level, we examine the actions of the trial court rather than the DMV hearing officer. (*Thompson v. Department of Motor Vehicles* (1980) 107 Cal.App.3d 354, 358; see also *MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 218.) Although we review the trial court's findings to determine whether they are supported by substantial evidence, we review a challenge to an evidentiary ruling for abuse of discretion. (*Miyamoto v. Department of Motor Vehicles* (2009) 176 Cal.App.4th 1210, 1217.)

Kroll's due process claim, though constitutionally based, concerns the admissibility of hearsay evidence. As he did not object at the administrative hearing to Mahon's out-of-court statement placing him inside the Jeep, his claim was forfeited, and the trial court would not have abused its discretion in considering the statement. (*Dibble v. Gourley* (2002) 103 Cal.App.4th 496, 503 [objection at administrative hearing necessary to preserve challenge based on hearsay], overruled on another ground in *MacDonald v. Gutierrez* (2004) 32 Cal.4th 150, 158–159; *Jackson v. Department of Motor Vehicles* (1994) 22 Cal.App.4th 730, 738 [failure to make foundational objection to arrest report at DMV hearing forfeited challenge to admissibility of document]; see also *Bledsoe v. Biggs Unified School Dist.* (2008) 170 Cal.App.4th 127, 141 & fn. 11 [current version of Govt. Code, § 11513, subd. (d) requires hearsay objection at

was concerned about a criminal prosecution for driving under the influence, the Attorney General notes that Mahon's apparently false statements to police officers regarding the identity of the driver could have caused her to fear prosecution for violating Penal Code section 148.

administrative hearing]; *Lake*, *supra*, 16 Cal.4th at pp. 461–462 [witness statements identifying person as the driver, though otherwise hearsay subject to no exception, were admissible to supplement or explain the driver's own admission under Govt. Code, § 11513, subd. (c)].)

Even if Kroll's challenge were cognizable on appeal, we would find any error harmless. "No judgment shall be set aside . . . in any cause . . . for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13; *Leal v. Gourley* (2002) 100 Cal.App.4th 963, 968 [applying standard of prejudice in California Constitution to error in DMV proceedings].) "In other words, it must be reasonably probable a more favorable result would have been reached absent the error. [Citation.]" (*Lone Star Security & Video, Inc. v. Bureau of Security & Investigative Services* (2009) 176 Cal.App.4th 1249, 1255.) Error is not prejudicial when it is merely cumulative of other evidence properly in the record or " 'was not necessary, the judgment being supported by other evidence.' " (*Ibid.*)

Mahon's statement placing Kroll in the Jeep, though contrary to Kroll's position he arrived at the scene after the accident, did not identify him as the driver. The evidence as a whole made it clear Mahon was intoxicated at the scene and would have had as much incentive as Kroll to deny having driven the Jeep if she had been the guilty party. Other, stronger evidence supported the conclusion Kroll was the driver—his injuries, his implausible explanations for those injuries, the position of the Jeep's driver's seat, and his failure to direct the police to friends who could corroborate his story. It is not reasonably probable Kroll would have obtained a more favorable result if Mahon's statement had been disregarded.

"Due process requires full and fair administrative hearings that provide drivers a ' "meaningful opportunity to present their case." ' [Citation.]" (*Petrus v. Department of Motor Vehicles* (2011) 194 Cal.App.4th 1240, 1244.) Kroll was given a full administrative hearing, at which he was able to cross-examine the investigating officer

8

and present the testimony of three witnesses who supported his version of events. His case was reviewed by the trial court in a mandamus proceeding. His inability to cross-examine Mahon regarding statements that did not identify him as the driver did not render the proceedings unfair.

C.       *Witness Credibility*

The DMV hearing officer noted in her written findings that she had determined Kroll's witnesses were not credible. Kroll argues the trial court improperly deferred to this finding, rather than making its own assessment of witness credibility. We are not persuaded.

When a driver petitions for a writ of mandate following a license suspension, the trial court exercises its independent judgment on the evidence. (*Morgenstern v. Department of Motor Vehicles* (2003) 111 Cal.App.4th 366, 372.) As part of this review, the court is permitted to draw its own inferences from the evidence and make its own credibility determinations. (*Ibid.*) At the same time, it must afford a strong presumption of correctness to the administrative findings, with the burden resting on the complaining party to show the decision is contrary to the weight of the evidence. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817; *Arthur v. Department of Motor Vehicles* (2010) 184 Cal.App.4th 1199, 1204–1205.)

The order denying the writ indicates the court reviewed the writ petition, the administrative record, the DMV's opposition, and supplemental points and authorities submitted by Kroll. The supplemental points and authorities discuss the independent judgment standard at length and urge the court to find Kroll's witnesses credible. During oral argument before the trial court on the writ, the parties discussed the weight of the evidence and the relative credibility of the witnesses. In light of the briefing and argument on this subject, and given the lack of any indication to the contrary, we presume the trial court was aware of the applicable law and applied the appropriate standard when reviewing the administrative record. (*Howard v. Thrifty Drug & Discount Stores* (1995) 10 Cal.4th 424, 443; *In re Merrick V.* (2004) 122 Cal.App.4th 235, 254

9

[absent indication to the contrary, we presume court was aware of and followed the law]; Evid. Code, § 664.)

Kroll points to the final sentence in the order denying the writ, which states, "The court notes that the Hearing Officer was in the best position to assess the credibility of the witnesses." He argues this language shows the trial court declined to make its own determination of witness credibility, citing *Barber v. Long Beach Civil Service Com.* (1996) 45 Cal.App.4th 652, 658. In that case, the trial court considered an administrative decision upholding the termination of a police officer "where the major underlying issue was one of credibility." (*Id*. at p. 653.) Though bound to apply an independent standard of review when considering the officer's petition for writ of mandate, the trial court expressly, and incorrectly, stated it had no ability to reweigh the credibility determinations made by the administrative agency. (*Id*. at pp. 658–659.) Because the court was "flatly wrong," and because the error "went to the heart of [the] case" (*id*. at p. 659), the matter was remanded to the trial court for a redetermination of the mandate petition (*id*. at p. 660).

No similar error infects the trial court's decision in this case. The court simply observed that the DMV officer who actually heard the testimony of the witnesses firsthand was in the best position to assess their credibility. Independent review " 'does not mean that the preliminary work performed by the [agency] in sifting the evidence and making its findings is wasted effort. . . . [I]n weighing the evidence the courts can and should be assisted by the findings of the [agency]. *The findings of the* [*agency*] *come before the court with a strong presumption of their correctness, and the burden rests on the complaining party to convince the court that the* [*agency*]*'s decision is contrary to the weight of the evidence*. [Citation.]" (*Fukuda v. City of Angels*, *supra*, 20 Cal.4th at p. 812.)

D.      *Substantial Evidence*

Kroll argues the evidence before the trial court was insufficient as a matter of law to sustain a determination he drove under the influence. Again we disagree. Our review of the trial court's decision is for substantial evidence, with all conflicts resolved in favor

10

of the trial court's decision and all factual findings upheld unless the evidence was insufficient as a matter of law. (*Lake*, *supra*, 16 Cal.4th at p. 457.) When two or more inferences can be deduced from the facts, the appellate court may not substitute its judgment for that of the trial court. (*Brierton*, *supra*, 130 Cal.App.4th at p. 508.)

A number of circumstances support the trial court's determination Kroll was the driver: (1) he was present at the accident scene; (2) Farley observed a red mark on Kroll's shoulder that matched the distended seat belt in the driver's seat of the Jeep; (3) Kroll's initial explanation of his injuries as resulting from "martial arts" was implausible, and was contrary to his equally implausible testimony at the DMV hearing that his ankle injury was caused by a sword while dancing at the party; (4) the driver's seat was adjusted for someone of Kroll's height, and Mahon, the only other person at the scene, was shorter than Kroll; (5) Kroll identified "Maureen" as the driver, but this person was not at the scene of the accident; and (6) though Kroll told Farley he had been dropped off at the scene by a friend, he never provided contact information to the police so they could verify his claim he had not been driving. Though the trial court had the power to reweigh the evidence in its review, we do not. (*Brierton*, *supra*, 130 Cal.App.4th at p. 508.) Substantial evidence supports the denial of the writ.

### III.  DISPOSITION

The judgment is affirmed.

_____

NEEDHAM, J.

We concur.

_____

JONES, P. J.

_____

SIMONS, J.