Filed 3/29/16

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JOHN PINHEIRO,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>CIVIL SERVICE COMMISSION FOR THE COUNTY OF FRESNO, et al.,<br><br>    Defendants and Respondents. | F070473<br><br>(Super. Ct. No. 13CECG03615)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County. Carlos A. Cabrera, Judge.

Motschiedler, Michaelides, Wishon, Brewer & Ryan and Russell K. Ryan for Plaintiff and Appellant.

Daniel C. Cederborg, County Counsel, and Catherine E. Basham, Deputy County Counsel, for Defendants and Respondents.

-ooOoo-

John Pinheiro appeals from a judgment denying his petition for writ of mandate by which he sought to overturn the decision of the Civil Service Commission for the County of Fresno (Commission) upholding his dismissal as the County's labor relations manager. On appeal, Pinheiro raises a number of issues, including that he was denied a fair hearing because the Commission relied on evidence outside the record when it upheld his

dismissal.  We agree that Pinheiro was denied a fair hearing on this basis, reverse the judgment, and remand for a new hearing before the Commission.

## FACTUAL AND PROCEDURAL BACKGROUND

The County hired Pinheiro in November 2004 as a personnel services manager. His position was laterally reclassified to that of labor relations manager in June 2009; three years later, his title was changed back to personnel services manager.  As personnel services manager, Pinheiro was responsible for managing the labor relations division and acting as the County's chief spokesperson in labor negotiations for memoranda of understandings (collective bargaining agreements) with many unions in the numerous County bargaining units.

In May 2012, Beth Bandy, the County's Personnel Director, authorized an investigation of Pinheiro after two County employees, Hollis Magill and Amy Ryals, reported to her and employee benefits manager Paul Nerland, that Pinheiro was having an affair with County employee Vanessa Salazar.  Salazar had told Magill and Ryals that Pinheiro had hit her more than once.  Nerland conducted a preliminary investigation; he interviewed staff and reviewed Salazar's email records.  Bandy determined based on Nerland's interviews, as well as her review of Pinheiro and Salazar's email and phone records, that further investigation was warranted.

Because Pinheiro was a "very public, well-known figure" in the County, and in order to be as fair and objective as possible, the County retained an outside investigator, Richard St. Marie, to conduct a formal investigation.  After reviewing documents provided by the Personnel Services Department and conducting extensive one-on-one interviews of the parties involved, as well as other County employees and supervisors, St. Marie issued an internal investigation report in which he sustained the following allegations: (1) insubordination, based on Pinheiro's violation of Bandy's directive not to communicate with Salazar during the work day and his releasing confidential information to Salazar; (2) dishonesty, based on Pinheiro's uncooperativeness, evasiveness, and

2.

argumentativeness during his interview with St. Marie, and his refusal to answer questions truthfully; and (3) misuse of work time, based on an extreme number of personal telephone calls made during the normal work day. St. Marie could not determine if there had been work place or domestic violence due to Pinheiro and Salazar's unwillingness to cooperate with the investigation, and did not sustain the allegation of sexual harassment, as Salazar stated she was not sexually harassed, and denied a sexual or dating relationship with Pinheiro.

On September 4, 2012, Pinheiro was served with a proposed order of disciplinary action, namely termination, and notice of a *Skelly*[1] hearing set for September 12, 2012. At the request of Pinheiro's attorney, the hearing was continued first to September 26 and then to October 1. After Pinheiro's attorney objected to the County's Chief Administrative Officer (CAO), John Navarrette, sitting as the hearing officer, the County appointed Chief Probation Officer Linda Penner to act as the hearing officer. After the October 1 *Skelly* hearing, Penner determined the intended discipline of termination was appropriate.

On October 1, 2012, Bandy signed the "Order for Disciplinary Action" (Order). The Order notified Pinheiro that he was dismissed from his County position the following day based on violations of county personnel rules governing inefficiency,

---

[1] In *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, the California Supreme Court held that in order to satisfy due process, an agency considering disciplinary action against a public employee must accord the employee certain "preremoval safeguards," including "notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." (*Id.* at p. 215.) "The Supreme Court's directive gave rise to an administrative procedure known as a *Skelly* hearing, in which an employee has the opportunity to respond to the charges upon which the proposed discipline is based." (*Flippin v. Los Angeles City Bd. of Civil Service Com'rs* (2007) 148 Cal.App.4th 272, 280.)

insubordination, neglect of duty, dishonesty, discourteous treatment of the public and other employees, willful violation of any County code or lawful departmental or County regulation or order, and conduct which bears some rational relationship to the employment and is of a character that can reasonably result in the impairment or disruption of County service.

Pinheiro appealed his dismissal to the Commission. Following an administrative hearing that spanned five days, and included the testimony of 19 witnesses and admission of numerous documentary exhibits, the parties submitted closing briefs. Thereafter, the Commission issued a Notice of Decision in which it denied Pinheiro's appeal and unanimously upheld his dismissal.

The Commission subsequently issued a 129-page formal Findings of Fact and Conclusions of Law denying Pinheiro's appeal, in which it found the County had just cause to terminate Pinheiro based on five "separate wrongdoings[,]" each of which constituted "separate and independent" just cause for his termination: (1) Pinheiro repeatedly violated numerous orders that he was to have no contact with Salazar during work time on work premises; (2) Pinheiro violated his confidentiality oath of office, the County's confidentiality rules, and direct orders, by repeatedly disclosing confidential matters to Salazar; (3) Pinheiro violated the County's anti-moonlighting policy by secretly working for Club One as a professional poker player; (4) Pinheiro repeatedly committed petty thefts of bags of potato chips and sodas from sandwich shops near his office; and (5) Pinheiro repeatedly lied to St. Marie and his superiors, and lied at the Commission hearing.

Pinheiro then filed the instant petition for writ of administrative mandamus. The parties submitted briefs, and Pinheiro asked the trial court to take judicial notice of additional documents. Following oral argument, the trial court took the matter under submission. The trial court issued a 17-page statement of decision and order denying the petition. Pinheiro appealed from the ensuing judgment.

**DISCUSSION**

Code of Civil Procedure section 1094.5[2] governs judicial review of a final decision by an administrative agency if the law required a hearing, the taking of evidence, and the discretionary determination of facts by the agency. (*Id.*, subd. (a).) To overcome the validity of an administrative decision, a petitioner must show the agency acted without or in excess of jurisdiction, did not afford a fair trial, or prejudicially abused its discretion. (*Id.*, subd. (b).) "[I]n cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence." (*Id.,* subd. (c).)

Pinheiro first contends that he was denied a fair trial. Specifically, he argues the County and Commission violated his due process rights by: (1) relying on evidence obtained outside the Commission hearing; (2) using law enforcement records as a factor in upholding his dismissal; (3) relying on misconduct more than three years old; (4) relying on evidence that was not admitted and excluding evidence relevant to his defenses; and (5) relying on evidence of contact with Salazar prior to any directive prohibiting contact.

The "fair trial" requirement of section 1094.5 is not synonymous with constitutional due process and does not mandate "a formal hearing under the due process clause." (*Pomona College v. Superior Court* (1996) 45 Cal.App.4th 1716, 1730.) What is required is simply a "fair administrative hearing" (*ibid.*), which affords the appellant a " ' "reasonable opportunity to be heard." ' " (*Rodriguez v. Department of Real Estate* (1996) 51 Cal.App.4th 1289, 1297; *Pinsker v. Pacific Coast Society of Orthodontists* (1974) 12 Cal.3d 541, 555.)

---

[2] Undesignated statutory references are to the Code of Civil Procedure.

When reviewing an appellant's claim that he or she did not receive a fair trial, we will uphold the trial court's decision if it is supported by substantial evidence. (*Vollstedt v. City of Stockton* (1990) 220 Cal.App.3d. 265, 273 (*Vollstedt*).) However, where, as here, the evidence is substantially undisputed and the fair trial issue presents a question of law, we independently review the fair trial issue. (*Ibid.*; *Rosenblit v. Superior Court* (1991) 231 Cal.App.3d 1434, 1444; *Wood v. City Civil Service Commission* (1975) 45 Cal.App.3d 105, 111.) Generally, we reverse only if the alleged error prejudicially affected the appellant's substantial rights. (California Administrative Mandamus (Cont.Ed.Bar 2015) § 6.47, p. 6-37, citing *Leal v. Gourley* (2002) 100 Cal.App.4th 963, 969 and other cases.)

We begin with Pinheiro's claim that the Commission improperly relied on evidence outside the record of the Commission hearing. During the Commission hearing, Pinheiro claimed the investigation was commenced, and he ultimately was terminated, in retaliation for him telling Bandy and Navarrette that they were acting unlawfully by interfering with the efforts of the Service Employees International Union (SEIU) to represent its members and supporting the County's correctional officers' efforts to separate from the SEIU, and that they should remain neutral in the matter. A hearing on the officers' petition to modify their unit was held before the Commission on September 25, 2012 (the modification hearing).

At the February 2013 Commission hearing on Pinheiro's appeal of his dismissal (the dismissal hearing), the Commission's hearing officer, Thomas Campagne, questioned Pinheiro about the apparent inconsistencies between his testimony at the two hearings. After Pinheiro confirmed that he did not tell Penner at the *Skelly* hearing that he was claiming retaliation, Campagne pointed out that Pinheiro testified under subpoena at the modification hearing that the County wanted to be neutral as to whether the correctional officers should be allowed to form a separate unit, which was confirmed in a letter Pinheiro sent to the Commission. Pinheiro responded that he testified that

6.

neutrality was in question and he hinted there were problems, but he was not able to finish his testimony due to breaks in the modification hearing.

Campagne continued to question Pinheiro from Campagne's recollection of Pinheiro's testimony at the modification hearing. Pinheiro confirmed that he had put into evidence a letter he signed in May 2012, which basically stated that the County had decided to remain neutral, and that he supported that position. Pinheiro further confirmed that he testified at the modification hearing that Bandy had directed him to sign and send the letter. Pinheiro, however, denied testifying that he got Navarrette's permission to sign the letter.

Pinheiro confirmed that the May 2012 letter he sent was an exhibit at the dismissal hearing, which he testified about at the modification hearing, but "[n]ot completely." Pinheiro said that at the modification hearing, he testified that he and his subordinates had remained neutral, but his principals had not, and the modification hearing transcript would show he testified that he had questions about his superiors' neutrality. The County's attorney interjected that Pinheiro's testimony in this regard was quoted in a letter as follows: "I emphasized to the County of Fresno neutrality. I'm not certain that the [C]ounty took a position of neutrality." Campagne asked Pinheiro if, by this testimony, he was telling the Commission that he did not know if the decision went up to the Board of Supervisors or stopped at his office. Pinheiro responded that he had been prepared to tell the Commission that he knew that Bandy and Navarrette were not, in fact, neutral in the process, but he did not have a chance to say that on the record because he was cut off.

Pinheiro also testified at the dismissal hearing that Bandy told him in late February 2012 that Navarrette was having lunch with the president of Unit 1 to discuss the unit modification, which Pinheiro questioned because initially "they" wanted to put the correctional officers into Unit 1. Bandy and Pinheiro agreed that Navarrette "should not be doing it." Pinheiro testified he thought it was "crazy" because in prior unit

7.

modifications and decertifications with other unions, the CAO had never been involved. Bandy also told Pinheiro that Navarrette's son was a correctional officer. Pinheiro thought this was even more reason why Navarrette should be recused. At that point, Pinheiro said he told Bandy that she had to stop Navarrette "because it's illegal, it's absolutely illegal."

Campagne asked Pinheiro whether there had been other unit modifications where the County had not remained neutral on the issue of whether "a unit should be carved up." Pinheiro could not recall any, and testified that during his tenure as labor relations manager he always communicated that the County should remain neutral in order to avoid unfair labor practice charges and follow the law. Pinheiro confirmed that the County's Employee Relations Ordinance (ERO) allowed the County to take a position for or against the change in a unit's size, but explained he was concerned here because never before had the CAO been as intrinsically involved in the process. Because Navarrette had never been involved in the process before and his son was a correctional officer, Pinheiro believed it was "painting a very bad picture," and Navarrette should have been recused from the process.

In paragraphs 17, 20 and 21 of the Commission's Findings, the Commission referred to Pinheiro's testimony at the modification hearing. In paragraph 17, the Commission found that Pinheiro lied about his retaliation defense in part because the Commission "recall[ed]" that at the Unit 2 hearing, Bandy, Navarrette and the County remained neutral even though the County's administrative rules for unit modification allowed and encouraged the County to make a recommendation to the Commission on whether to change a unit.

In paragraph 20, the Commission discredited Pinheiro's testimony that he told Bandy she had to stop Navarrette from talking with the Unit 1 president because it was illegal, since it was not illegal under the County's unit rules for the CAO to recommend to the Commission what or who should be placed in or out of an existing unit. The

8.

Commission noted that at the modification hearing, Pinheiro himself testified that Bandy and Navarrette had chosen for the County to remain neutral in lieu of exercising the County's right to express a preference, and Pinheiro even put into evidence his letter explaining the County's decision to remain neutral.

In paragraph 21, the Commission found that Pinheiro was lying when he testified that he always told Bandy and Navarrette that the County should remain neutral at unit modification hearings, as the County's rule allowed the CAO to make a recommendation to the Commission on the County's behalf. The Commission further explained: "[Pinheiro] might think this Commission has no memory. But in reality this Commission clearly remembers the applicable Employee Relations Ordinance (ERO) personnel rule and the Commission requesting the County state on the record whether the County wanted the Correctional Officers in or out of Unit 2. It was Pinheiro himself personally who wrote the letter to the Commission stating that Mr. Navarrette and Ms. Bandy cho[]se him to express their neutrality. See the Unit Modification transcript for September 25, 2012 at pages 443 through 518. There Pinheiro himself testified that he wrote the neutrality letter staying out of the C.O. versus SEIU Unit 2 conflict at the request of Ms. Bandy and Mr. Navarrette who always wanted to be neutral. Also it is silly for Pinheiro to now testify that a County statement of unit p[reference] would subject the County to a PERB un[fair] labor practice cha[r]ge from SEIU (for stating a unit p[reference].) In reality the SEIU attorney at the unit modification hearing demanded that the County state their p[reference] as allowed under the ERO."

In addressing this issue below, the trial court found that, with "two small exceptions" in paragraph 21, the facts and matters the Commission relied on in paragraphs 17, 20 and 21 were specifically discussed at the hearing, with Pinheiro given a full opportunity to respond. The two exceptions were: (1) the Commission's statement that it requested the County to state on the record whether it wanted the correctional

9.

officers in or out of Unit 2; and (2) the SEIU attorney's demand that the County state its preference on the issue.

The trial court, however, determined that reversal was not required because (1) the Commission had merely noted "two rather insignificant factoids not presented at the Commission hearing" in a nearly four-page discussion of the County's neutrality stance in connection with unit modification; (2) Pinheiro was present at the modification hearing, and the issue of the County's neutrality was addressed during Pinheiro's examination at the dismissal hearing, spanning 26 pages of transcribed testimony; (3) the facts outside the record that the Commission relied on pertained only to the issue of whether the County was required to remain neutral, which issue was addressed in detail during Pinheiro's examination; and (4) Pinheiro was able to refute and explain his position on that issue both during the hearing and in his closing brief. Under the circumstances, the trial court could not find that Pinheiro was denied a fair hearing.

On appeal, Pinheiro argues reversal is required because the Commission relied on the following evidence from the modification hearing that was not part of the record before the Commission: (1) the Commission's memory of that hearing; (2) 35 pages of the hearing transcript; (3) his testimony at that hearing; and (4) the SEIU attorney's statements at that hearing. He contends the evidence became a "material part" of the Findings used to discredit all of his testimony concerning unit modification and retaliation, to credit Navarrette's testimony on the subject, and to further discredit his retaliation claim.

Our Supreme Court has long held that a right to a hearing is violated if an administrative tribunal relies on evidence outside the record in reaching its decision. (*English v. City of Long Beach* (1950) 35 Cal.2d 155, 158-159 (*English*); *La Prade v. Department of Water & Power* (1945) 27 Cal.2d 47, 51-52 (*La Prade*); see *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2006) 40 Cal.4th 1, 11 [" 'The decision of the agency head should be based on the record and

not on off-the-record discussions from which the parties are excluded.' "].)  As the Court explained in *La Prade*: "Administrative tribunals exercising quasi-judicial powers which are required to make a determination after a hearing cannot act on their own information. Nothing may be treated as evidence which has not been introduced as such, inasmuch as a hearing requires that the party be apprised of the evidence against him in order that he may refute, test and explain it." (*La Prade*, *supra*, 27 Cal.2d at pp. 51–52.)

In *English*, a civil service board sustained the city manager's dismissal of a police officer for being physically unable to perform his duties following a hearing at which the officer and his attorney appeared, and witnesses were called who testified about the officer's physical condition and its relation to the performance of his duties.  (*English*, *supra*, 35 Cal.2d at p. 157.)  Before the board reached its decision, individual board members took evidence outside both the hearing and the presence of the officer and his attorney; some talked to the officer's examining physician and one board member consulted his own personal physician.  This information was imparted to the other board members, who considered and relied upon it in reaching their decision.  (*Ibid.*)

The Court held the officer was deprived of a fair trial: "The action of such an administrative board exercising adjudicatory functions when based upon information of which the parties were not apprised and which they had no opportunity to controvert amounts to a denial of a hearing.  [Citations.]  Administrative tribunals which are required to make a determination of a hearing cannot act upon their own information, and nothing can be considered as evidence that was not introduced at a hearing of which the parties had notice or at which they were present.  [Citations.]  The fact that there may be substantial and properly introduced evidence which supports the board's ruling is immaterial.  [Citation.]  A contrary conclusion would be tantamount to requiring a hearing in form but not in substance, for the right of a hearing before an administrative tribunal would be meaningless if the tribunal were permitted to base its determination upon information received without the knowledge of the parties.  A hearing requires that

11.

the party be apprised of the evidence against him so that he may have an opportunity to refute, test, and explain it, and the requirement of a hearing necessarily contemplates a decision in light of the evidence there introduced." (*English*, *supra*, 35 Cal.2d at pp. 158-159.)

Because the civil service board relied on information taken outside the hearing in arriving at its decision, which the officer did not have an opportunity to refute, the Court concluded that the matter must be remanded to the civil service board for a full and fair hearing. (*English*, *supra*, 35 Cal.2d at pp. 159-160.) The Court recognized that generally a tribunal's order or decision will not be reversed due to erroneous rulings on the admission of evidence when there is "substantial evidence, properly admitted, which supports a tribunal's determination." (*Id.* at p. 159.) The Court, however, explained that there was a considerable difference "between the alleged improper admission of evidence, such as hearsay, for example, and the consideration of and reliance upon information received without the knowledge of the parties and at a time and place other than that appointed for the hearing. In the former class of cases, the parties are informed of the evidence to be used against them, they may object to it, explain it, or test it and introduce countervailing evidence. None of those safeguards are available, however, when the board secretly obtains information and bases its determination thereon." (*Ibid.*)

Other examples of public employees being deprived of a fair hearing based on the consideration of evidence outside the record are found in *La Prade*, *supra*, 27 Cal.2d 47, and *Vollstedt*, *supra*, 220 Cal.App.3d 265. In *La Prade*, the Court held that a civil service employee challenging his dismissal was denied a hearing where the agency introduced no evidence to support its claim of misconduct and the hearing panel, in reaching its decision sustaining his dismissal, relied on an investigative report that was not introduced into evidence and was not provided to the employee. (*La Prade*, *supra*, 27 Cal.2d at pp. 49-50, 52-53.)

In *Vollstedt*, the Court of Appeal held that a city employee, who was challenging his demotion, was denied a fair hearing where: (1) the civil service commission, after a two-day hearing, forwarded an advisory recommendation to the city manager, who was the final decision maker, that there was insufficient evidence to support the demotion, but failed to also transmit a statement of facts as required by a city ordinance; and (2) the city manager, without reviewing the evidence presented at the hearing and without a written statement of facts, rejected the commission's recommendation and decided to uphold the demotion based on information supplied by the city's personnel director, which the employee had no notice of nor an opportunity to controvert. (*Vollstedt*, *supra*, 220 Cal.App.3d at pp. 268-269.)

Here, the trial court found that while the Commission did consult and rely on extra-record evidence in its Findings, Pinheiro was not denied a fair hearing because that evidence was insignificant and touched upon a subject, namely whether the County was required to remain neutral, that Pinheiro was questioned about at the dismissal hearing, and which he was able to refute and explain. We disagree and conclude that the trial court erred in finding Pinheiro had been given a fair hearing.

While the record shows that the hearing officer questioned Pinheiro about his testimony at the modification hearing concerning the County's neutrality, Pinheiro was not apprised that the Commission would later consult the transcript of that hearing to garner evidence which it then used to undermine Pinheiro's credibility. As Pinheiro points out, as shown in paragraph 21 of the Findings, the Commission relied on the following facts taken from the Commission's memory and 75 pages of the transcript of the modification hearing, neither of which were in evidence at the February 2013 hearing: (1) the ERO personnel rule and the Commission's request that the County state on the record its position regarding the correctional officers; (2) that Pinheiro personally wrote the letter to the Commission stating that Navarrette and Bandy chose him to express their neutrality; (3) Pinheiro testified he wrote the neutrality letter at the request of Bandy and

13.

Navarrette, who always wanted to remain neutral; and (4) the SEIU attorney demanded the County state its preference, as allowed under the ERO. Based on this extra-record evidence, the Commission found that Pinheiro was lying when he testified he always told Bandy and Navarrette that the County should remain neutral at unit modification hearings, and it was "silly" for him to testify that a statement of unit preference would subject the County to an unfair labor practice charge.

While at first blush this may seem to be a small point in the context of the 129-page Commission decision, a review of that decision reveals that Pinheiro's credibility was the crux of the case. Based on Pinheiro's "strange testimony and peculiar odd demeanor," the Commission went on to discredit "all of Pinheiro's testimony" regarding Navarrette or Bandy taking a position, and having words of disagreement, regarding the unit modification, and found that Pinheiro did not warn Bandy or Navarrette about taking a position on the unit modification. The Commission further found, after judging Navarrette's demeanor, and considering his and Bandy's testimony, that neither Navarrette nor Bandy discriminated or retaliated against Pinheiro. The Commission determined that Pinheiro's retaliation argument was an afterthought that he "falsely asserted" "very late in the game[,]" after the *Skelly* hearing, his answer was filed, and "this lie first appeared in his pre-trial brief without support."

The Commission also used the extra-record evidence from the unit modification hearing to find truthful Navarrette's testimony concerning the correctional officers' attempt to separate from Unit 2. For example, the Commission found Navarrette truthful when he testified that he never met with the Unit 1 president to discuss the unit modification, stating the testimony was "particularly believable in light of the actual testimony that went on within the Sheriff Correctional Associations 'Unit Modification' hearing against SEIU Unit 2. Therein Mr. Navarrette's department asserted a neutral position. The CAO's testimony is now consistent in that regard." The Commission also found that Navarrette truthfully testified that he did not encourage the correctional

14.

officers to file their motion to modify Unit 2, he did not care who represented the correctional officers, and, consistent with the Commission's recollection of the modification hearing, the County took a neutral position at that hearing. The Commission found Navarrette credible when he testified that Pinheiro never told him that he was illegally supporting the correctional officers' separation from Unit 2 and never told Pinheiro that he wanted the correctional officers to be "carved away" from Unit 2. In so finding, the Commission recalled that the CAO took a neutral position at the modification hearing, and discredited all of Pinheiro's testimony in this regard as untruthful based on his "bad" demeanor and inconsistent statements with his prior testimony at the unit modification hearing.

The Commission's determination of Pinheiro's credibility affected more than his retaliation claim. For example, the Commission found, as a ground for Pinheiro's dismissal, that although Pinheiro signed a written promise to tell the truth during the investigation, he repeatedly lied to the investigator, he lied to his superiors, and he "obviously lied" during his testimony before the Commission, which "conduct alone requires the termination of such a high level employee."

The County asserts that any error in the Commission relying on extra-record evidence was harmless, since the Commission discredited Pinheiro's testimony on bases other than his testimony at the modification hearing, such as by finding Navarrette and Bandy credible in their own right. Since credibility was key to the Commission's overall findings, however, we will not assume the error was harmless. As in *English*, we cannot uphold the Commission's decision based on other evidence when the Commission relied on information taken outside the hearing in reaching its decision sustaining Pinheiro's dismissal which Pinheiro had no opportunity to refute.

Since Pinheiro was denied a fair hearing on this ground, reversal is required. Accordingly, we need not address Pinheiro's remaining issues. We do note, however, that the trial court found that the Commission impermissibly relied on the following law

15.

enforcement records to support Pinheiro's termination, in violation of Labor Code section 432.7, subdivision (a): [3] (1) citations Pinheiro was issued in 1987 and 2001 for solicitation of prostitution, which did not result in convictions; and (2) a police report from a robbery of Pinheiro in which a prostitute made allegations that Pinheiro had solicited her. The trial court determined that the citations could not be considered because there was no independent evidence or investigation establishing that Pinheiro in fact solicited and the weight of the evidence did not support the Commission's finding that Pinheiro lied about the citations. The trial court also determined the County violated Labor Code section 432.7 when it found, based solely on the police report of the robbery, that Pinheiro was not robbed, as he reported to police, but instead there was a fight over money for sexual services. While we agree with the trial court's determination that the Commission improperly relied upon the citations and police report, we need not decide their prejudicial effect since we are remanding for rehearing.

## DISPOSITION

We reverse the judgment and remand the cause to the superior court with directions to issue a writ of mandamus requiring the Commission to vacate its decision

---

[3] Labor Code section 432.7, subdivision (a), prohibits an employer from "seek[ing] from any source whatsoever, or utiliz[ing], as a factor in determining any condition of employment including . . . termination, . . . any record of arrest or detention that did not result in conviction . . . ." The purpose of this section is to prevent the misuse of criminal offender records information; it does not prohibit an employer from disciplining an employee where the employer independently investigates the conduct giving rise to the arrest or detention. (*Pitman v. City of Oakland* (1988) 197 Cal.App.3d 1037, 1044; *Cranston v. City of Richmond* (1985) 40 Cal.3d 755, 774.) On this basis, the trial court determined the Commission did not violate Labor Code section 432.7 when it found that Pinheiro engaged in the repeated theft of potato chips and soda from sandwich shops, as in so finding, the Commission relied on direct evidence outside the law enforcement reports in the form of the testimony of a sandwich shop owner and a sheriff, both of whom witnessed the thefts.

16.

sustaining Pinheiro's dismissal and to afford him a fair independent review in accordance with this opinion.  Pinheiro is awarded his costs on appeal.

_____
GOMES, Acting P.J.

WE CONCUR:


_____
DETJEN, J.


_____
FRANSON, J.