[No. A061677. First Dist., Div. Three. Dec. 23, 1993.]

WILLIAM DESMOND et al., Plaintiffs and Appellants, v.
COUNTY OF CONTRA COSTA, Defendant and Respondent.

## COUNSEL

William G. Segesta for Plaintiffs and Appellants.

Victor J. Westman, County Counsel, and Diana J. Silver, Deputy County Counsel, for Defendant and Respondent.

## OPINION

**MERRILL, J.**—William and Tanya Desmond appeal from a judgment denying their petition for writ of administrative mandate. That petition sought to set aside the decision of the Board of Supervisors (Board) of the County of Contra Costa (County) denying their application for a land use permit. Appellants contend that the administrative findings of the Board are not supported by substantial evidence, and that the standards imposed by the applicable County ordinances exceed the maximum standards set by Government Code section 65852.2 for second units in residential zones. We disagree and therefore affirm the judgment.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

The subject property, which is located at 8 Golden Hill Court in Walnut Creek, is zoned R-15, single-family residential district. Appellants sought and received issuance of a building permit to construct an addition to their single-family home. The addition consisted of a new two-car garage and second-level bedroom addition with a separate foundation detached from the principal structure. The new unit was attached to the existing single-family home by means of second-story decking. The building permit contained a provision that no kitchen facilities could be included in the new unit unless appellants first obtained a land use permit to allow construction of a residential second unit at that location. Appellants then submitted an application for a land use permit for a residential second unit.

Relying on alleged statements by unnamed County employees that issuance of a use permit would be "pro forma," appellants did not wait to obtain

the permit before commencing construction of the new unit. When a hearing was held on appellants' application for a permit to establish a residential second unit the County zoning administrator approved it. Thereafter, a group of neighbors filed an appeal to the County Planning Commission from the zoning administrator's approval of the issuance of the land use permit. County staff recommended that the planning commission uphold the decision of the zoning administrator, but following a public hearing and review of the matter, the planning commission voted unanimously to uphold the neighbors' appeal and deny the application, on the grounds that the proposed second residential unit was not architecturally compatible with the overall character of the neighborhood, and that development of the second unit would present a threat to public health, safety and welfare.

Appellants appealed the decision of the planning commission to the County Board, which held a public hearing on the matter. At the close of the hearing, the Board declared its intent to deny the appeal and the application, and directed the staff to prepare findings to support its decision. By a vote of three to two, the Board affirmed its earlier expressed intent, denied the appeal and the application, and adopted the staff findings.

In its findings, the Board stated that the property was currently designated in the County general plan as single-family residential, low density. The Board found that the proposed residential second unit was "architecturally incompatible with the overall neighborhood character and the primary residence in terms of scale, colors, materials and designs for trims, windows, roof, roof pitch and other exterior physical features" (finding No. 7); that development of the second unit would "present a threat to the public health, safety and welfare in that the second unit would result in excessive neighborhood noise and would create traffic and parking problems" (finding No. 8); that "[s]pecial conditions or unique characteristics of the subject property and its location or surroundings are not established" (finding No. 9); and that "[a] second unit is not suitable in this location, is out of character with the surrounding neighborhood and would be an intrusion into the neighborhood" (finding No. 10). In support of these findings, the Board cited the administrative record on appellants' application for a land use permit, County Ordinance Code sections 82-24.1002 and 26-2.2008, and the "on-site observations and comments" by a member of the Board at the public hearing.

Appellants filed a petition for writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5, asking the court for a writ of mandate and injunctive relief ordering the County and the Board to vacate the decision denying appellants' application and to issue a land use permit for the residential second unit. The trial court denied appellants' petition on

the ground that appellants had failed to establish either that finding No. 10 was not supported by substantial evidence in the record, or that that finding was legally irrelevant to the denial of the request for a land use permit.

In its decision, the trial court stated: "Specifically, [appellants] do not point to evidence that a [residential] second unit is not out of character with the surrounding neighborhood. There is substantial evidence in the record that the second residential unit would be out of character because the surrounding streets at the moment contain only single-family dwellings.

"[Appellants'] argument that Finding No. 10 is irrelavant [*sic*] is not raised in the petition and is not supported by any authority.

"Finding No. 10 supports Finding No. 8: development of the second unit will present a threat to public health, safety, and welfare contrary to one of the requirements for a land use permit (C.C.C. Ord. Code § 82-24.1002(13)). It was within the discretion of the [Board and the County] to take the concerns of the neighbors into account and to decide that the public welfare would be served by denying the permit; that . . . Finding No. 10 . . . is sufficient to support the denial of [appellants'] application for a land use permit."

On this basis, the trial court denied appellant's petition for writ of mandate and entered judgment for the County. This appeal followed.

## II. STANDARD OF REVIEW

In bringing their petition for writ of administrative mandamus, appellants argued that the County Board prejudicially abused its discretion. Under Code of Civil Procedure section 1094.5, subdivision (b), "[a]buse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." Both in the trial court and on appeal, appellants have conceded that this is not a case in which the trial court is authorized by law to exercise its independent judgment on the evidence, and thus that abuse of discretion is established only upon a determination that the findings of the administrative body were not supported by substantial evidence in the light of the whole record. (Code Civ. Proc., § 1094.5, subd. (c); *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 32 [112 Cal.Rptr. 805, 520 P.2d 29] [substantial evidence standard used when no fundamental vested right involved].)

The scope of our review of the subject administrative agency action in this case is identical with that of the superior court. The same substantial

evidence standard applies, and the issue is whether the findings of the County Board were based on substantial evidence in light of the entire administrative record. (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 149, fn. 22 [93 Cal.Rptr. 234, 481 P.2d 242]; *Zuniga* v. *County of San Mateo Dept. of Health Services* (1990) 218 Cal.App.3d 1521, 1530-1531 [267 Cal.Rptr. 755]; *County of San Diego* v. *Assessment Appeals Bd. No. 2* (1983) 148 Cal.App.3d 548, 554-555 [195 Cal.Rptr. 895].) Moreover, because the trial court did not exercise its independent judgment in reviewing the Board decision, but instead applied the substantial evidence test, we must examine the findings made by the Board itself to determine whether they were supported by substantial evidence, rather than limiting ourselves to a review of the findings made by the trial court. (*Stearns* v. *Fair Employment Practice Com.* (1971) 6 Cal.3d 205, 211 [98 Cal.Rptr. 467, 490 P.2d 1155]; *Bixby* v. *Pierno*, *supra*, 4 Cal.3d at pp. 143-144, fn. 10; Cal. Administrative Mandamus (Cont.Ed.Bar 1989) §§ 4.162-4.163, 14.27, pp. 205-207, 463-464.)

■ Under current interpretations of the substantial evidence test as applied in review of administrative agency action, we must examine all relevant evidence in the entire record, considering both the evidence that supports the administrative decision and the evidence against it, in order to determine whether or not the agency decision is supported by "substantial evidence." (*Universal Camera Corp.* v. *Labor Bd.* (1951) 340 U.S. 474, 488-490 [95 L.Ed. 456, 467-468, 71 S.Ct. 456]; *Bixby* v. *Pierno*, *supra*, 4 Cal.3d at p. 149, fn. 22; *LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 635-639, fn. 22 [83 Cal.Rptr. 208, 463 P.2d 432]; *Zuniga* v. *County of San Mateo Dept. of Health Services*, *supra*, 218 Cal.App.3d at pp. 1530-1531; *County of San Diego* v. *Assessment Appeals Bd. No. 2*, *supra*, 148 Cal.App.3d at pp. 554-555.) For this purpose, ". . . substantial evidence has been defined in two ways: first, as evidence of ' " 'ponderable legal significance . . . reasonable in nature, credible, and of solid value' " ' (*Ofsevit* v. *Trustees of Cal. State University & Colleges* (1978) 21 Cal.3d 763, 773, fn. 9 [148 Cal.Rptr. 1, 582 P.2d 88]); and second, as ' "relevant evidence that a reasonable mind might accept as adequate to support a conclusion" ' (*Hosford* v. *State Personnel Bd.* (1977) 74 Cal.App.3d 302, 307 [141 Cal.Rptr. 354])." (*County of San Diego* v. *Assessment Appeals Bd. No. 2*, *supra*, 148 Cal.App.3d at p. 555.)

At the trial court level, the petitioner in an administrative mandamus proceeding has the burden of proving that the agency's decision was invalid and should be set aside, because it is presumed that the agency regularly performed its official duty. When the standard of review is the substantial evidence test, as it is here, it is presumed that the findings and actions of the administrative agency were supported by substantial evidence. (*Caveness* v.

*State Personnel Bd.* (1980) 113 Cal.App.3d 617, 630 [170 Cal.Rptr. 54]; *Barnes* v. *Personnel Department* (1978) 87 Cal.App.3d 502, 505 [151 Cal.Rptr. 94].) Thus, since the same standard of review applies now on appeal as did in the trial court, the burden is on appellant to show there is no substantial evidence whatsoever to support the findings of the Board. (*Pescosolido* v. *Smith* (1983) 142 Cal.App.3d 964, 970 [191 Cal.Rptr. 415].)

### III. SUFFICIENCY OF THE EVIDENCE TO SUPPORT FINDINGS

■ Applying this standard of review to the decision of the County Board in this case, we are of the opinion that the administrative record does contain substantial evidence to support the Board's affirmance of the denial of appellant's application for a land use permit for the purpose of establishing a second residential unit.

Under the applicable County ordinances, of which we take judicial notice (Evid. Code, §§ 452, subd. (b), 459; *Longshore* v. *County of Ventura* (1979) 25 Cal.3d 14, 24 [157 Cal.Rptr. 706, 598 P.2d 866]), the County planning agency division "shall make" certain findings before granting a land use permit for a residential second unit. (Contra Costa County [hereafter C.C.C.] Ord. Code, § 82-24.1002.) Among these findings are that "[t]he second unit is architecturally compatible with overall neighborhood character and the primary residence in terms of scale, colors, materials and design for trim, windows, roof, roof pitch and other exterior physical features"; "[t]he second unit does not result in excessive neighborhood noise, traffic, or parking problems"; and "[d]evelopment of the second unit does not present a threat to public health, safety or welfare." (C.C.C. Ord. Code, § 82-24.1002, subds. (8), (11), (13).)

In addition, the provision on granting land use permits for residential second units specifically requires that the agency must make findings in accordance with the separate ordinance dealing with variance, conditional use and special permits found at article 26-2.20 of the County Ordinance Codes. The findings that must be made prior to granting a conditional use permit include that the proposed land use "shall not adversely affect the preservation of property values"; "shall not create a nuisance and/or enforcement problem within the neighborhood"; and "shall not encourage marginal development within the neighborhood." (C.C.C. Ord. Code, §§ 26-2.2008, subds. (3), (5), (6); 82-24.1002.)

Failure to make any one of these findings must result in denial of the application for a land use permit. (C.C.C. Ord. Code, §§ 26-2.2008, 82-24.1002.) Because we are reviewing a *denial* of a requested land use permit,

it is not necessary to determine that *each* finding by the Board was supported by substantial evidence. As long as the Board made a finding that any one of the necessary elements enumerated in the ordinances was lacking, and this finding was itself supported by substantial evidence, the Board's denial of appellant's application must be upheld.

Finding No. 8, stating that the development of a residential second unit would present a threat to public health, safety and welfare by resulting in excessive neighborhood noise, traffic and parking problems, negates two of the necessary elements for granting a land use permit for a second unit, as enumerated in County Ordinance Code section 82-24.1002, subdivisions (11) and (13). Neighbors of the proposed second residential unit gave ample testimony that because of the nature of the cul-de-sac on which the primary residence is located, an additional living unit on the street would create traffic, parking, safety, noise and nuisance problems. Contrary to appellants' position, expert testimony on these issues is not necessary. It is appropriate and even necessary for the County to consider the interests of neighboring property owners in reaching a decision whether to grant or deny a land use entitlement, and the opinions of neighbors may constitute substantial evidence on this issue. (*Smith* v. *County of Los Angeles* (1989) 211 Cal.App.3d 188, 201-204 [259 Cal.Rptr. 231]; *Nelson* v. *City of Selma* (9th Cir. 1989) 881 F.2d 836, 840.)

Finding No. 10, stating that "[a] second unit is not suitable in this location, is out of character with the surrounding neighborhood and would be an intrusion into the neighborhood," is related to several of the enumerated requirements for issuance of a residential second unit land use permit. Provisions in the County ordinances relevant to this finding include that the second unit be "architecturally compatible with overall neighborhood character" (C.C.C. Ord. Code, § 82-24.1002, subd. (9)); that it not "adversely affect the preservation of property values" (C.C.C. Ord. Code, § 26-2.2008, subd. (3)); that it not create "a nuisance and/or enforcement problem within the neighborhood or community" (C.C.C. Ord. Code, § 26-2.2008, subd. (5)); that it not "encourage marginal development within the neighborhood" (C.C.C. Ord. Code, § 26-2.2008, subd. (6)); and, generally, that it not be detrimental to health, safety and general welfare (C.C.C. Ord. Code, §§ 26-2.2008, subd. (1); 82-24.1002, subd. (13)).

These provisions in the County Ordinance Code give the County and its planning agencies the authority to consider the effect of proposed projects on the character of the surrounding neighborhood. It is well established that the concept of public welfare encompasses a broad range of factors, including aesthetic values as well as monetary and physical ones, and that a concern

for aesthetics and "character" is a legitimate governmental objective. (*Metro-media, Inc.* v. *San Diego* (1981) 453 U.S. 490, 502 [69 L.Ed.2d 800, 811-812, 101 S.Ct. 2882]; *Berman* v. *Parker* (1954) 348 U.S. 26, 33 [99 L.Ed. 27, 37-38, 75 S.Ct. 98]; *Guinnane* v. *San Francisco City Planning Com.* (1989) 209 Cal.App.3d 732, 741 [257 Cal.Rptr. 742]; *Novi* v. *City of Pacifica* (1985) 169 Cal.App.3d 678, 682 [215 Cal.Rptr. 439].) Other "concerns that fall well within the domain of the public interest and welfare" include parking, traffic and visual impact. (*Guinnane* v. *San Francisco City Planning Com., supra,* 209 Cal.App.3d at p. 743.)

Thus, although finding No. 10 does not expressly restate any particular one of the several relevant ordinance requirements, it is actually a summation of several of them. It articulates various significant elements necessarily included in the general concept of public welfare but not expressly enumerated in the County Ordinance Code. It is therefore directly related to finding No. 8, stating that the development of the proposed second residential unit would present a threat to public health, safety and welfare. This finding of unsuitability to the character of the surrounding neighborhood is sufficient by itself to support the denial of appellants' application for a land use permit. (*Guinnane* v. *San Francisco City Planning Com., supra,* 209 Cal.App.3d at pp. 740-743 [local agency denied permit on basis of finding that large size of house was "not in character" with surrounding neighborhood even though in technical compliance with zoning and building codes; upheld].)

Contrary to appellants' position, the fact that their proposed second unit would be the first such unit in the neighborhood does not render finding No. 10 irrelevant as a matter of law. There are many reasons why a residential second unit might be unsuitable for a particular location and "out of character" with a neighborhood, aside from the fact that it is the first such unit in that location. Such a unit might be perfectly suitable in a different neighborhood with different conditions, even though it was the first such unit in that neighborhood. The kinds of houses in this neighborhood, the street configurations (mostly cul-de-sacs), the traffic patterns, and the lot sizes, are all significant factors to be considered in making this determination. It is clear from the record that these considerations were taken into account by the Board in this case.

Moreover, the County Ordinance Code specifically *requires* a consideration of the effect of a proposed use on neighboring property values. The fact that a second unit would be the first such development in a given neighborhood may well be relevant to a determination of the effect of the unit on local property values.

Finding No. 10 is supported by substantial evidence in the administrative record. In the first place, the same evidence supporting finding No. 8 also supports finding No. 10. To the extent the proposed residential second unit would result in excessive neighborhood noise, traffic, or parking problems, it would clearly be "an intrusion into the neighborhood" and "not suitable to this location."

There was ample evidence of community concern with the impact of a residential second rental unit on the general aesthetic character of the neighborhood, as well as on traffic, safety, and protection of property values. These concerns were repeatedly expressed by neighbors opposing the application. In addition, one member of the Board testified to his personal observations of the proposed residential second unit and the surrounding neighborhood, and stated his opinion that it was not in character with the area. The Board properly took these opinions into account in making its determination, and they constitute substantial evidence to support the discretionary finding that the proposed second residential unit was intrusive and not suitable to the character of the surrounding neighborhood. (*Smith* v. *County of Los Angeles*, *supra*, 211 Cal.App.3d at pp. 201-204.)

Thus, at least two of the Board's findings (findings No. 8 and 10) were supported by substantial evidence in the administrative record. Each of these findings was contrary to the requirements for issuance of a land use permit; either one was sufficient to support the denial of appellants' application.

## IV. LEGAL RELEVANCE OF THE BOARD'S FINDINGS

■ Much of appellants' argument on appeal concerns their position that the Board's findings were impermissible under the maximum standards for residential second units purportedly set by Government Code section 65852.2.[1] This contention is without merit.

Section 65852.2 was adopted to encourage local governments to enact their own ordinances allowing and regulating so-called "granny flat" residential second units in single-family and multi-family zones where they would otherwise be prohibited. (*Wilson* v. *City of Laguna Beach* (1992) 6 Cal.App.4th 543, 545-546 [7 Cal.Rptr.2d 848].) The statute sets up a three-option approach under which a local government may choose to ban all residential second units on condition of making certain findings that such units would have specific adverse impacts on public health, safety and welfare (§ 65852.2, subd. (c)); adopt its own ordinance providing for the creation of second units and establishing various criteria for approving them

---

[1]Unless otherwise indicated, all further statutory references are to the Government Code.

(§ 65852.2, subd. (a)); or do neither and follow a state-prescribed procedure for approving or disapproving applications for creation of second units (§ 65852.2, subd. (b)). (*Wilson* v. *City of Laguna Beach, supra*, 6 Cal.App.4th at p. 553.)

Under section 65852.2, subdivision (a), any local agency may adopt an ordinance providing for the creation of second units, consistent with a list of six provisions. These provisions are phrased in permissive terms stating that local standards for second units "may include, but are not limited to" various criteria. In contrast, under section 65852.2, subdivision (b), every local agency which *fails* to adopt an ordinance governing second units in accordance with subdivisions (a) or (c) "*shall* grant a special use or a conditional use permit for the creation of a second unit if the second unit complies" with an enumerated list of nine specific requirements. (Italics added.) Unlike the provisions in subdivision (a), those contained in subdivision (b) do not use permissive or discretionary terms, but are mandatory.

At the end of this list of requirements, subdivision (b) states: "No other local ordinance, policy, or regulation shall be the basis for the denial of a building permit or a use permit under this subdivision.

"This subdivision establishes the maximum standards that local agencies shall use to evaluate proposed second units on lots zoned for residential use which contain an existing single-family dwelling. No additional standards, other than those provided in this subdivision or subdivision (a), shall be utilized or imposed, except that a local agency may require an applicant for a permit issued pursuant to this subdivision to be an owner-occupant.

"This section does not limit the authority of local agencies to adopt less restrictive requirements for the creation of second units." (§ 65852.2, subd. (b).)

Appellants concede that because the County has adopted an ordinance regulating the creation of residential second units, it is governed by section 65852.2, subdivision (a). However, they contend that the language in subdivision (b) stating that "[t]his subdivision establishes the maximum standards that local agencies shall use to evaluate proposed second units" applies equally to an ordinance drafted under subdivision (a), and thus, an ordinance enacted pursuant to subdivision (a) may not impose standards which exceed those enumerated in subdivision (b). In support of this contention, appellants argue that the intent of the statute is to encourage the creation of residential second units by barring undue local restrictions on their creation.

This argument ignores the broadly permissive language contained in section 65852.2, subdivision (a), giving local agencies discretion in the

specific criteria they may adopt for approving second units. For example, subdivision (a)(1) states that "[a]reas *may* be designated within the jurisdiction of the local agency where second units *may* be permitted." (Italics added.) The necessary implication of this provision is that a local agency may forbid the creation of second units in other areas. Subdivision (a)(3) states: "Standards *may* be imposed on second units which *include, but are not limited to*, parking, height, setback, lot coverage, architectural review, and maximum size of a unit." (Italics added.) This language clearly contemplates that local agencies may impose *additional* standards on the creation of residential second units. Similarly, subdivision (a)(4) states that a local agency "*may* find that second units do not exceed the allowable density for the lot upon which the second unit is located, and that second units are a residential use that is consistent with the existing general plan and zoning designation for the lot." (Italics added.) The implication of this language is that a local agency may also decline to make such a determination, in its discretion.

In short, section 65852.2, subdivision (a), which applies to local agencies that have adopted ordinances providing for the creation of second units, contains broadly permissive language on the standards that a local government may impose on applications for such units. The "maximum standards" set forth in subdivision (b), by their own terms, apply only to *that* subdivision, and are not relevant when a local government has adopted an appropriate ordinance governing second units.

The County's second unit ordinance complies with section 65852.2, subdivision (a). There is nothing in the standards and criteria set forth in the County's ordinance that conflicts with anything in subdivision (a), or with the legislative intent of that statute. To the contrary, the provisions of the ordinance are consistent with the suggested standards set forth in subdivision (a), and are in accord with the kinds of land use regulations that have been consistently upheld in this state. (*Guinnane* v. *San Francisco City Planning Com.*, *supra*, 209 Cal.App.3d at pp. 736-743.)

The judgment is affirmed.

White, P. J., and Werdegar, J., concurred.