Filed 11/4/20  Fancher v. County of Tulare CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CATHY FANCHER,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>COUNTY OF TULARE,<br><br>  Defendant and Respondent. | F078899<br><br>(Super. Ct. No. PCU274579)<br><br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  Antonio A. Reyes, Judge.

Cathy Fancher, in pro. per., for Plaintiff and Appellant.

Deanne A. Peterson, County Counsel, Kathleen A. Taylor and Amy I. Myers, Deputy County Counsel, for Defendant and Respondent.

-ooOoo-

Tulare County (the county), through its code enforcement officers and a county department known as the Resource Management Agency (RMA), determined that the condition of real property owned by Cathy and William Fancher (the Fanchers) in the

---

[*]     Before Levy, Acting P.J., Poochigian, J. and Snauffer, J.

Springville area of Tulare County constituted a public nuisance as a health and safety hazard because, among other things, it was covered with garbage, solid waste, vermin infestations, electrical or wiring deficiencies, abandoned vehicles, and dilapidated unsafe mobile homes or other structures. After being notified of multiple code violations and the need to take reasonable steps to correct them, the Fanchers elected to request an administrative hearing. At the administrative hearing, the county presented compelling evidence to corroborate the violations, while the Fanchers—who called themselves "sovereign citizens" —offered various theories upon which they claimed the county's code enforcement actions were void or without jurisdiction. On the record before it, the hearing officer upheld the county's findings in toto. The Fanchers challenged the hearing officer's decision by filing a petition for writ of administrative mandate in the trial court under Code of Civil Procedure section 1094.5. In resolution thereof, the trial court reviewed the administrative record, heard the arguments of the parties, and denied the writ petition. The Fanchers[1] now appeal from the judgment entered in favor of the county following the denial of their petition. We conclude the Fanchers have failed to meet their burden on appeal to show prejudicial error or abuse of discretion. As the trial court correctly held, the administrative decision was supported by substantial evidence, and no basis was or is shown by the Fanchers for any relief under Code of Civil Procedure section 1094.5. Accordingly, the judgment is affirmed.

## FACTS AND PROCEDURAL HISTORY

The County Obtains an Inspection Warrant

In February 2017, the county filed an application to the trial court for the issuance of an inspection warrant to allow entrance upon and inspection of the Fanchers' real

---

[1] The notice of appeal is signed only by Cathy Fancher, and thus she is the sole appellant. However, in the interest of simplicity and ease of expression, our discussion herein shall continue to refer to the Fanchers in the plural, since they are the parties who owned the land affected by the county's code enforcement action and by this appeal.

2.

property, which real property the county had reasonable cause to believe contained substandard or dangerous conditions amounting to a risk to public health and safety and constituting a public nuisance.

The application for an inspection warrant was supported by the declaration of Richard Garcia, a code enforcement officer for the county, setting forth an extensive history of the code violations existing at the Fanchers' property since 2014. Garcia's declaration reported that the Fanchers identify themselves as "sovereign citizens," and thus Garcia always seeks to coordinate any inspections with law enforcement. In 2015, the Fanchers were ordered by a hearing officer in an administrative hearing to bring their property into compliance with code standards within 30 days, or else monetary penalties would become due. According to Garcia, one of the Fanchers became angry and threatened that next time an inspection of the property was tried, "you better bring at least 20 men." In a later attempt to see if the violations were corrected, Garcia and a Tulare County deputy sheriff were ordered off the land and told that they (the Fanchers and others dwelling there) were not governed by such laws. Relevant documentation confirming the code enforcement and abatement proceedings in 2014–2015 regarding the condition of the Fanchers' real property, along with photographic evidence, were provided by Garcia in the exhibits attached to his declaration.

Garcia stated in his declaration that in February 2017, when called to a neighboring property, he could see from his vantage point, in plain sight, that the Fanchers' property continued to have the same substandard conditions as previously found in the prior code enforcement proceedings, including solid waste, accumulation of tires, inoperative vehicles, debris, the dilapidated mobile home, among other things. Photographs were taken by Garcia at that time, which were attached to his declaration. Garcia also noted in his declaration that Hector Ramos, a building and zoning inspector for the county, reviewed the overall investigation and concurred the subject property is a public nuisance, a fire hazard and dilapidated. Furthermore, attached information from

3.

the sheriff's office indicated numerous arrests and calls for service to the property, including for many drug-related incidents or arrests.

In seeking the issuance of the inspection warrant, Garcia further stated in this declaration: "Tulare County Ordinances declared anything which is injurious to human health or is indecent or offensive to the senses to be a Public Nuisance. The SUBJECT PROPERTY has ongoing violations, is a fire hazard, is dilapidated and un-maintained, solid waste, trash and debris, inoperative vehicles, is an attractant for immoral acts, unsafe and a general Public Nuisance. Based on the information contained in these reports, there is good cause to believe that a public nuisance exists on the SUBJECT PROPERTY. Specifically, this condition is currently violating the Health and Safety Code, Tulare County Ordinance and Tulare County Zoning Ordinance."

On February 23, 2017, the trial court issued the requested inspection warrant. The inspection warrant authorized any code compliance officer of the county, any agents or representatives of the county agency, RMA, and any Tulare County Sheriff's Officer to enter, inspect and investigate the Fanchers' real property for the purpose of inspecting a public nuisance. Pursuant to the warrant, such inspection shall include "the observation of physical conditions, the taking of photographs, the taking of samples and the entry into outbuildings, as well at the primary or main structure. If necessary, inspection shall include the cutting of locks and/or taking of evidence for the purpose of confirming a violation of the Tulare County Ordinances and the Health and Public Safety Codes. Such inspection shall be reasonably conducted so as to effect as minimal an intrusion as possible." The inspection warrant stated it was effective for a period of 14 days.

On March 7, 2017, the identical inspection warrant was re-issued by the trial court. This re-issuance was made by the trial court because an extension of time was needed, due to staffing issues with the Tulare County Sheriff's Office being available. Such an extension or renewal of an inspection warrant is expressly permitted by Code of Civil

4.

Procedure section 1822.55. The inspection warrants in this case were duly signed by the trial court in accordance with Code of Civil Procedure section 1822.50.

The Inspection of the Property

On March 20, 2017, Garcia executed a "Return" to the inspection warrant (the Return), which briefly described what was found when the inspection warrant was carried out. In the Return, Garcia stated that on March 16, 2017, he, inspector Ramos, other code compliance staff, and a sheriff's deputy executed the inspection warrant on the property. Approximately seven travel trailers and two motor homes were located on the property and appeared to be occupied but were in substandard and unsafe condition. Additionally, solid waste, junk, trash, and debris, and several more inoperable vehicles were found. According to the Return, inspector Ramos and the code compliance staff concurred with Garcia that the Fanchers had created and maintained a public nuisance of solid waste, junk, trash, unsafe and substandard mobile homes, inoperative and abandoned vehicles, and a fire hazard. The property was determined to be noncompliant with provisions of the Tulare County Ordinance Code, California Building Code, and California Health and Safety Code.

Abatement Proceedings Initiated by the County

On March 28, 2017, the county served on the Fanchers by mail a 30-day notice to correct or abate the ordinance code violations. The 30-day notice specifically identified the particular code violations present on the Fanchers' property. Many of the violations cited therein referred to Health and Safety Code section 17920.3, which section declares "substandard" any unsafe, unsanitary or dilapidated structure or premises "that endangers the life, limb, health, property, safety, or welfare of the public or occupants thereof"; other violations in the 30-day notice referred to provisions of the county ordinance code.

The 30-day notice required the correction or removal of, among other items, the following described conditions on the property, each of which were separately correlated in the 30-day notice to the particular ordinances or code provisions that were violated:

5.

(1) accumulation of solid waste; (2) unsafe buildings not in compliance with building standards and other code requirements, with such violations including (a) infestation of insects, vermin or rodents; (b) general dilapidation; (c) lack of adequate garbage and rubbish storage and removal facilities; (d) deteriorated or inadequate foundations; (e) defective or deteriorated flooring or floor supports; (f) defective or deteriorated members of ceilings and roof supports; (g) deficient electrical wiring, including because wiring was exposed to weather and improperly spliced outside of box, and no meter or electrical service; (h) deteriorated or ineffective waterproofing of exterior walls, foundations, floors and windows; (i) broken, rotted, split or buckled exterior wall coverings or roof coverings; (j) improper accumulation of junk, organic matter, debris, garbage, offal, rodent harborages, stagnant water, combustible material, and similar materials or conditions that constitute fire, health, or safety hazards, including solid waste under the house, junk, garbage, and stagnant water under the house; (k) lack of stairway for back exit; (l) lack of fire extinguishers or smoke detectors; (3) improperly occupied travel trailers that were connected to utilities and located outside of an RV park without a temporary special use permit, which trailer(s) must either be relocated to an RV park or temporary special use permits applied for and obtained.

The 30-day notice provided that if the property was not brought into compliance within the 30-day period, the matter would be placed on the administrative hearing agenda, at which time fines or penalties would be assessed and the county's costs recovered. The 30-day notice was signed on behalf of the county by code enforcement officer Richard Garcia and building inspector Michael Grove. A 30-day notice follow-up was conducted on April 27, 2017, at which time additional photographs were taken of the property.

On May 8, 2017, the RMA served a notice of violation order to correct and a notice of assessment of costs, civil fines and penalties. On May 23, 2017, Cathy Fancher filed a request for administrative hearing to appeal the assessment of fines and penalties.

6.

A notice of administrative hearing was served by RMA, setting the hearing date for June 21, 2017. The date of hearing was later rescheduled to June 28, 2017. Pre-hearing inspection photographs were taken on June 27, 2017.

The Administrative Hearing

The administrative hearing was held on June 28, 2017 before hearing officer Kevin Tromborg. Garcia appeared on behalf of the county, and he presented the facts contained in the staff report and his personal observations extensively detailing the unsafe and unsanitary condition of, and the numerous code violations on, the property. Garcia further noted that approximately 10 people were residing on the subject property in trailers and recreational vehicles found there.

Cathy Fancher appeared at the administrative hearing with her son, Zac Fancher, at which time Cathy Fancher authorized Zac Fancher to speak for her at the hearing. Zac Fancher did not address the asserted code violations or the condition of the property, but instead emphasized that he and his mother are "sovereign citizens." He wanted to make clear that no concession of jurisdiction was being made, and he asserted that the RMA, an agency of the county, had only "fictional authority." Zac Fancher argued there were errors or discrepancies in the inspection warrant and other papers and that procedures were not adequately followed, and therefore he believed rights were violated by the county since the matters being presented were, in his opinion, essentially a fraud upon the court. The hearing officer repeatedly urged Zac Fancher to submit any evidence he may have relating to the code violations themselves, or the condition of the property, but no such evidence was ever offered.

After considering the notice of violation, the staff report and the testimony provided by the parties, the hearing officer found the code violations did occur and still existed on the property, and further declared the violations to constitute a public nuisance.

7.

Appeal to Board of Supervisors

The decision of the hearing officer was appealed by the Fanchers to the county board of supervisors. The Fanchers failed to appear for their scheduled appeal before the board of supervisors. The matter proceeded to be heard in the Fanchers' absence. The staff report was presented to the board of supervisors by the associate director of RMA for the county. The extensive violations of health and safety laws were presented, along with the Fanchers' failure to take any steps to correct the violations. The presentation emphasized, among other things, the dangerous substandard condition of the mobile homes, the grossly unsanitary conditions including solid black wastewater leakage into the ground and other accumulations of waste and garbage, vermin infestations and the deficient wiring and electrical hazards. It was stated by the RMA associate director that the property "is creating and maintaining a public nuisance" because of "unsafe and substandard mobile homes, inoperative and abandoned vehicles … fire hazard, and … threat to public safety." The board of supervisors considered the staff report presentation, reviewed the photographic evidence of the condition of the property, and affirmed the decision of the hearing officer.

The Petition to the Trial Court for Writ of Administrative Mandate

On July 6, 2018, the Fanchers filed a petition for a writ of administrative mandate in the trial court (the petition). According to the petition, Cathy Fancher is "a living Woman," and William and Zac Fancher are each a "living man." We note the petition's substantive allegations are largely vague and conclusory in nature. For example, a broad unsupported assertion is made that any code enforcement on private property would be illegal. The petition also alleges that because the word "abatement" was crossed out on the inspection warrant paperwork, and/or because there were allegedly irregularities in how the court clerk's filing stamp appeared, the entire inspection warrant must have been forged, false or counterfeit. Additionally, the petition alleges that the inspection warrant was not specific enough.

8.

To summarize, the petition by the Fanchers alleged by conclusory assertion and vague generalization that the inspection warrant and code compliance process conducted by the county were part of an illegal or fraudulent conspiracy against them. In that same vein, the petition included further conclusory claims that the county had no jurisdiction, did not follow due process and committed "document fraud."

Trial Court Denies Petition for Writ of Administrative Mandate

The hearing on the petition was held by the trial court on December 18, 2018. Cathy Fancher appeared and read a prepared statement, which included that she, as a living woman, has discovered "jurisdictional defective paperwork to the administrative decision." She asserted the inspection warrant was "fraudulent and void," and stated further that the administrative decision lacked subject matter jurisdiction and therefore was "void on its face." As support, she emphasized that since the word "abatement" was crossed out on the inspection warrant, it was "a false token." Further, she noted that some copies of the inspection warrant had a filing stamp and others had a cursive signature of the clerk, therefore she believed the inspection warrant was fabricated and void.

On behalf of the county, the county counsel responded to Ms. Fancher's arguments, explaining as follows: "I understand Mrs. Fancher's concern or confusion perhaps with some of the documents filed having a clerk's signature versus a stamped copy. I think Petitioners can confirm with their own filings in this case that when you file a document in the courts, the clerk signs the original and maintains and provides two stamped copies to the person filing the document. So when you go and get a copy of something that's been filed with the Court from the clerk, you're going to have a signature copy versus a stamped copy which is provided to the person filing at the time. [¶] And for clarification purposes, if this assists Mrs. Fancher in any way, she is correct that originally we did complete an application for abatement and inspection of the property. Prior to meeting with Judge Hillman to get the warrant signed, we felt that

9.

abatement was premature and elected to go in and simply inspect the property to decide what the best remedy was; to see if things could be repaired and things of that nature. So we have not sought an abatement warrant in this case yet. We have only sought an inspection warrant."

After reviewing the entire administrative record and hearing the parties' arguments, the trial court denied the petition for writ of administrative mandate. The trial court concluded that the administrative proceedings before the hearing officer proceeded legally and fairly. The trial court noted that even though the parties were permitted to speak and to present evidence at the administrative hearing, the Fanchers never addressed the specific facts regarding the actual condition of their property in response to the county's code enforcement/abatement proceedings against them. Further, the trial court noted the Fanchers were provided an opportunity to appeal from the hearing officer's decision to the county board of supervisors, but then they failed to appear at the time of the board of supervisors hearing of that matter. In summary, having found no wrongdoing or other ground for relief concerning the administrative proceedings, and implicitly agreeing that the administrative decision and findings were supported by substantial evidence, the trial court denied the petition for writ of administrative mandate. Judgment was entered in the county's favor on December 24, 2018.

On February 22, 2019, Cathy Fancher filed a notice of appeal from the judgment denying the petition for writ of administrative mandate.

## DISCUSSION

### I. Standard of Review

Code of Civil Procedure section 1094.5, the administrative mandamus[2] statute, provides for judicial review of administrative orders or decisions. (*Topanga Assn. for a*

---

[2] Administrative mandamus is another term for a petition for writ of administrative mandate.

10.

*Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 514.) Subdivision (b) of that section provides as follows: "The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Code Civ. Proc., § 1094.5, subd. (b).)

In cases involving a vested fundamental right, the trial court exercises independent judgment on the evidence. (*Molina v. Board of Administration, etc.* (2011) 200 Cal.App.4th 53, 60.) In such cases, an abuse of discretion is established if the trial court determines the findings are not supported by the weight of the evidence. In all other cases, the trial court determines whether the findings are supported by substantial evidence in light of the whole record. (Code Civ. Proc., § 1094.5, subd. (c); *Bixby v. Pierno* (1971) 4 Cal.3d 130, 144 [if the administrative decision does not involve any fundamental vested right, "the trial court must still review the entire administrative record to determine whether the findings are supported by substantial evidence and whether the agency committed any errors of law"].)

If the case does not involve a fundamental vested right, on appeal we review the administrative decision, not the superior court's decision. (*Kolender v. San Diego County Civil Service Com.* (2007) 149 Cal.App.4th 464, 470.) "Where an administrative decision is 'properly reviewed in the superior court under the substantial evidence standard or an abuse of discretion standard, the scope of review is the same in the appellate court as it was in the superior court, that is, the appellate court reviews the administrative determination, not that of the superior court, by the same standard as was appropriate in the superior court.' " (*County of Santa Clara v. Willis* (1986) 179 Cal.App.3d 1240, 1250; accord, *Desmond v. County of Contra Costa* (1993) 21 Cal.App.4th 330, 334–335 (*Desmond*).)

11.

Even where the trial court was required to apply the independent judgment standard of review, the standard of review on appeal of the trial court's judgment is the substantial evidence test. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 824.) Thus, on appeal, whatever standard was used below, the standard for our appellate review of the factual determinations is whether they are supported by substantial evidence. (*Prentice v. Board of Administration* (2007) 157 Cal.App.4th 983, 989.) In applying that test, we uphold the findings of the trier of fact unless they are so lacking in evidentiary support as to render them unreasonable. (*Jaramillo v. State Bd. For Geologists & Geophysicists* (2006) 136 Cal.App.4th 880, 888–889.) Moreover, "the petitioner in an administrative mandamus proceeding has the burden of proving that the agency's decision was invalid and should be set aside, because it is presumed that the agency regularly performed its official duty." (*Desmond*, *supra*, 21 Cal.App.4th at p. 335.)

Of course, as to any questions of law raised on appeal, we apply a de novo or independent standard of review to such questions. (*Molina v. Board of Administration, etc.*, *supra*, 200 Cal.App.4th 53, 61.)

Here, as explained hereinbelow, substantial evidence supported the factual determinations of the trial court and the administrative hearing officer, and furthermore, our independent review of any legal issues raised herein clearly supports the county's action and decision in this matter.[3]

## II. Substantial Evidence Supported the Administrative Findings and Conclusions

Based on our review of the administrative record, there was extensive evidence before the hearing officer to establish that a public health and safety hazard existed on the Fanchers' real property because, among other things, that real property was covered with

---

[3] We need not decide whether the administrative decision implicated a fundamental right or not in this case because, on this record and the substantial evidence supporting the administrative decision and trial court judgment, the outcome on appeal is the same either way.

12.

garbage, solid waste, unsanitary conditions, infestations of vermin, electrical or wiring deficiencies, fire hazards, abandoned vehicles, and dilapidated unsafe mobile homes or structures. The evidentiary and documentary record included, among other things, the testimony of code compliance officer Garcia, the staff report, the notice of violation, attachments to the inspection warrant request, the declaration of Garcia, the Return on inspection warrant, and photographic evidence. Accordingly, we conclude there was substantial evidence to support the underlying findings of the hearing officer, as also implicitly affirmed by the trial court, that the condition of the Fanchers' real property was unsafe, unsanitary and substandard in violation of numerous code provisions.

On appeal, the Fanchers make no discernible challenge to the findings that their property was in violation of numerous state and county health, safety, and building code standards, but they argue instead that the overall condition of the real property did not constitute a *public* nuisance. We disagree. A nuisance is defined by statute as "[a]nything which is injurious to health … or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property …." (Civ. Code, § 3479.) A "public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons …." (Civ. Code, § 3480.) The county's local ordinance included substantially the same definition.[4]

---

[4]     In the county's appellate brief as respondent herein, it summarizes the standard for finding a public "nuisance per se," which arises when a legislative body has previously enacted a law in the valid exercise of its police power that expressly declares a particular object, substance, activity, or circumstance to be a public nuisance. (*City of Monterey v. Carrnshimba* (2013) 215 Cal.App.4th 1068, 1086; *Beck Development Co. v. Southern Pacific Transportation Co*. (1996) 44 Cal.App.4th 1160, 1207.) If such a statute or ordinance was and is in place, the violation of that law would constitute a nuisance per se. "[T]o be considered a nuisance per se the object, substance, activity or circumstance at issue must be expressly declared to be a nuisance by its very existence by some applicable law." (*Beck Development Co. v. Southern Pacific Transportation Co*., *supra*, 44 Cal.App.4th at p. 1207.) On this issue, however, the county's appellate briefing is

13.

At the administrative hearing, Garcia testified there were numerous complaints by local neighbors regarding the condition of the Fanchers' real property which led to the county's code enforcement action. As for there being a health or safety risk to a considerable number of persons, we need look no further than the existence of conditions on the land reasonably constituting a significant fire hazard—that is, the combination here of exposed substandard electrical wiring and the large accumulation of garbage, trash and other combustible materials. (See, e.g., *People by South San Francisco v. Vasquez* (1956) 144 Cal.App.2d 575, 577 ["there is … no doubt that the building, as a public fire and health hazard, was a public nuisance subject to abatement"].) The existence of a fire hazard was expressly emphasized a number of times in the proceedings below, including at the time the inspection warrant was sought, the Return on inspection warrant, the 30-day notice to abate code violations, and the presentation by the county in the appeal before the board of supervisors. Contrary to the Fanchers' suggestion, an actual or present injury to a person is not required for a public nuisance to be found. (See *People v. Oliver* (1948) 86 Cal.App.2d 885, 889 [a significant fire hazard may be a sufficient basis for finding a public nuisance]; accord, 13 Witkin, Summary of Cal. Law (11th ed., 2017) Equity, § 161, pp. 497–498 [danger of a future injury may be actionable].) In summary, the Fanchers have failed to demonstrate through cogent legal argument or citation to the record why such hazardous conditions on their property (i.e., significant fire hazard) could not reasonably be deemed to constitute a public nuisance in this case. Nor, for that matter, have they offered any sound reason or factual basis that the other hazardous conditions (e.g., the dilapidated, unsafe, substandard, unsanitary condition of structures or mobile homes used as dwellings by a number of persons) were

deficient because it fails to specifically identify or direct this court's attention to the particular statute or ordinance it is relying on for this purpose, the violation of which by the Fanchers would assertedly constitute a nuisance per se.

14.

not also sufficient grounds to support a finding of public nuisance under the circumstances.

Under the substantial evidence test, we determine whether there is any evidence, which, when viewed in the light most favorable to an administrative decision or a court's judgment, will support the administrative or judicial findings of fact. (*Antelope Valley Press v. Poizner* (2008) 162 Cal.App.4th 839, 849, fn. 11.) The appellant has the burden of showing that the agency's decision is not supported by substantial evidence. (*JKH Enterprises, Inc. v. Department of Industrial Relations* (2006) 142 Cal.App.4th 1046, 1062.) Here, the evidence adequately supported—either directly or by reasonable inference—the findings made by the hearing officer and confirmed by the trial court that the condition of the Fanchers' real property not only violated code standards but constituted an appreciable risk to public health or safety. On this record, it was not error to declare the condition of the property to be a public nuisance, and the Fanchers have failed to meet their burden to show otherwise.

## III. The County Did Not Lack Jurisdiction

In their opening brief on appeal, the Fanchers argue the county lacked jurisdiction to pursue the code enforcement/abatement action. The Fanchers are clearly mistaken. Under the California Constitution, a "county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." (Cal. Const., Art. XI, § 7.) This broad authority is often referred to as the police power. (See *Candid Enterprises, Inc. v. Grossmont Union High School Dist.* (1985) 39 Cal.3d 878, 885.) Due to this police power, it is well established that local governments have wide-ranging authority to regulate land use through planning, zoning, and building ordinances, for the purpose of protecting public health, safety and welfare. (See, e.g., *Berman v. Parker* (1954) 348 U.S. 26, 32–33; *Euclid v. Ambler Realty Co.* (1926) 272 U.S. 365, 395; *Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1151–1152; *DeVita v. County of Napa* (1995) 9 Cal.4th 763, 781–782;

15.

*Building Industry Assn. of Central California v. County of Stanislaus* (2010) 190 Cal.App.4th 582, 589; *Burchett v. City of Newport Beach* (1995) 33 Cal.App.4th 1472, 1481–1482; *Ewing v. City of Carmel-by-the-Sea* (1991) 234 Cal.App.3d 1579, 1587–1588.)

Furthermore, in regard to code enforcement, the county was clearly entitled to enforce such land use laws (Cal. Const., Art. XI, § 7), and was also authorized to adopt and implement procedures for abatement of public nuisances. (See, e.g., Gov. Code, §§ 25845 & 25845.5; cf. Tulare County Ordinance Code, §§ 4-01-1000 & 4-01-1005; see also Health & Saf. Code, § 17980.8 [abatement by local enforcement agency of unsafe and substandard building or lot conditions as defined under state law standards].)

In light of the above principles relating to a municipality's broad authority to promulgate and enforce reasonable land use restrictions related to the protection of public health, safety, sanitation and welfare, we reject the Fanchers' conclusory and unsupported assertion that the county either lacked subject matter jurisdiction or acted in excess of its jurisdiction.

## IV. The Fanchers Received a Fair Hearing

The Fanchers' appeal makes several assertions that we would characterize as claims the proceedings were unfair, unlawful, or that a fair hearing or trial was not provided. We find these assertions to be unfounded and unpersuasive. In the present context, the Fanchers were entitled to a fair administrative hearing which would afford them a reasonable opportunity to be heard. (*Pinheiro v. Civil Service Com. for County of Fresno* (2016) 245 Cal.App.4th 1458, 1463 (*Pinheiro*).) That is precisely what they received in this case. The Fanchers had a reasonable opportunity to present argument and evidence at the time of the administrative hearing; they had the right to appeal the administrative decision to the board of supervisors, and did so (without bothering to appear), and subsequently exercised their right to file their mandamus petition to the trial court under Code of Civil Procedure section 1094.5. At each stage, our review of the

16.

record indicates a fair hearing and a reasonable opportunity to be heard was afforded. In an effort to show otherwise, the Fanchers make various conclusory assertions relating to whether they actually received a fair hearing. We address the most decipherable of these claims below. When reviewing such claims, we uphold the trial court's decision if it is supported by substantial evidence. Generally, we will reverse only if the alleged error prejudicially affected the appellant's substantial rights. (*Pinheiro*, *supra*, 245 Cal.App.4th at p. 1464.)

The Fanchers argue the hearing officer was not adequately qualified to hear a complex case. Since this issue was not raised in the Fanchers' opening brief, but only in the reply, we need not address it. (*Scott v. CIBA Vision Corp*. (1995) 38 Cal.App.4th 307, 322.) Even if the issue had been properly raised, the Fanchers have failed to show error. Under the applicable level of administrative review called for by Tulare County Ordinance Code section 1-23-5015, the review of such violations and penalties may be heard by the Director of the county agency *or* a "designee." (Tulare County Ordinance Code, § 1-23-5015, subd. (b).) According to the county, Kevin Tromborg was the contracted designee for such purposes. The county maintains that Tromborg, as the director of planning, zoning, and development and building inspector for the City of Corcoran, was "highly qualified" to serve as the county's designated administrative review officer in cases such as this one concerning substandard housing and/or zoning or land use violations. We would agree, and in any event, the Fanchers have failed to show that a person of Tromborg's experience and qualifications could not fairly and competently resolve the underlying factual matters and code violations involved here.

Another of the Fanchers' arguments claiming procedural unfairness is that the entire administrative process was false or fraudulent, or even void and lacking in jurisdiction, because of irregularities which the Fanchers perceived to exist in the inspection warrant and related court filings. The purported irregularities allegedly consisted of the fact that the word "abatement" was crossed out in the caption of the

17.

county's application for an inspection warrant, and also the fact that some copies of the inspection warrant (or related court filings) had a court clerk's printed name rather than a cursive name or signature set forth on the file-stamp by the court clerk. However, as noted hereinabove, these purported irregularities were fully and reasonably explained by county counsel at the time of the hearing on the Fanchers' petition for writ of administrative mandate. Inasmuch as there was no indication of any fraud or falsehood, the trial court, which reviewed the administrative record and listened to the parties' arguments, found no wrongdoing had occurred. On the record before us, which includes copies of the inspection warrants and related filings issued by the trial court, we reject the Fanchers' contention on appeal that the trial court erred in finding no wrongdoing. Nothing in the record before us or in the Fanchers' conclusory assertions on appeal would even remotely support the existence of any procedural unfairness, fraud or other wrongdoing relating to the inspection warrants or the court clerk's file-stamp format.

Additionally, contrary to the Fanchers' further contention, the trial court did not ignore their motion to augment the record. That motion had presented, among other things, documents showing the different formats of the court clerk's file-stamp on certain documents in this case. The county did not oppose the motion to augment, but responded it was unnecessary because it would duplicate matters already contained in the administrative record. The matter was apparently left unresolved at the motion hearing, with the trial court advising that any documents shall be filed by December 10, 2018. At the commencement of the December 18, 2018 hearing on the petition for writ of administrative mandate, the trial court noted: "This matter is on for ruling on a writ of mandamus. I received no other documentation." We discern no error or unfairness in the trial court's approach, and none has been established by the Fanchers. Nor have the Fanchers shown any prejudice occurred as a result of the trial court's handling of the motion to augment.

Finally, although there may be other remaining assertions by the Fanchers of perceived unfairness that we have not discussed, we conclude they are inadequately briefed, are conclusory, perfunctory and/or unintelligible, and therefore we need not separately address them. "Where a point lacks adequate legal discussion or citation to authority, we may treat it as abandoned." (*Bank of America, N.A. v. Roberts* (2013) 217 Cal.App.4th 1386, 1399; accord, *Holden v. City of San Diego* (2019) 43 Cal.App.5th 404, 418; *Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655–656; *Tilbury Constructors, Inc. v. State Comp. Ins. Fund* (2006) 137 Cal.App.4th 466, 482 [perfunctory claims asserted without adequate legal and factual analysis disregarded]; *People v. Turner* (1994) 8 Cal.4th 137, 214, fn. 19; *People v. Harper* (2000) 82 Cal.App.4th 1413, 1419, fn. 4 [argument raised in perfunctory manner waived].)

We conclude in the instant appeal that the Fanchers failed to demonstrate grounds for relief existed under Code of Civil Procedure section 1094.5, or that any prejudicial error or abuse of discretion occurred. Rather, it is clear from the record before us that substantial evidence supported the administrative hearing officer's findings and the trial court's judgment, and that the Fanchers received a fair trial and opportunity to be heard.

## DISPOSITION

The judgment of the trial court is affirmed. Costs on appeal are awarded to the county.